STATE of Wisconsin, Plaintiff-Respondent,

v.

Mark Allan CAMPBELL, Defendant-Appellant.†

Court of Appeals

*No. 2010AP905–CR. Submitted on briefs November 9, 2010.
—Decided December 7, 2010.*

2011 WI App 18

(Also reported in 794 N.W.2d 276.)

† Petition for Review denied 4/12/11.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Steven D. Phillips*, assistant state public defender, Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Daniel J. O'Brien*, assistant attorney general, and *J.B. Van Hollen*, attorney general.

Before Hoover, P.J., Peterson and Brunner, JJ.

¶ 1. PETERSON, J. Mark Campbell appeals a judgment convicting him of first-degree sexual assault of a child and an order denying his motion for postconviction relief. Campbell argues he is entitled to plea withdrawal or resentencing because the State breached his plea agreement. Campbell also contends the sentencing court lacked authority to order, as a condition of Campbell's sentence, that he have no contact with his minor son until Campbell has successfully completed sex offender treatment. We affirm.

## BACKGROUND

¶ 2. An Information charged Campbell with first-degree sexual assault of a child, incest, exposing a child to harmful material, and causing a child to view or listen to sexual activity. The charges stemmed from allegations that Campbell sexually assaulted his ten-year-old daughter. Pursuant to a plea agreement, Campbell pled guilty to first-degree sexual assault of a child, and the State agreed to dismiss the remaining charges. The State also agreed to recommend a total sentence of no more than twenty years, with initial confinement of no more than five to seven years.

¶ 3. The circuit court sentenced Campbell to thirty years' initial confinement and ten years' extended supervision. Campbell appealed based on the circuit court's failure to consider mandated sentencing guidelines. We agreed and reversed and remanded the case to the circuit court for resentencing. *See State v. Campbell*, No. 2008AP2065–CR, unpublished slip op. (WI App May 5, 2009).

¶ 4. At resentencing, the prosecutor informed the court, "The State's original agreement . . . was a recommendation of twenty years, twenty-year sentence." The prosecutor failed to inform the court of the State's recommendation that Campbell spend no more than five to seven years in initial confinement. Campbell's attorney did not object to the State's omission. However, during his sentencing argument, Campbell's attorney stated, "[T]he plea bargain in this case was five to seven years in and the balance of twenty on extended supervision."

¶ 5. The court imposed a forty-four year sentence, consisting of thirty-four years' initial confinement and ten years' extended supervision. The court also imposed

95

various conditions of confinement, one of which prohibits Campbell from having contact with his minor son until Campbell successfully completes sex offender treatment and fulfills other requirements. Specifically, the court stated:

> As far as [your son], no contact with [him]. However, after you participate in and successfully complete sex offender treatment and counseling, then you may have contact with [him], if agreed to by your treating professional and written permission of probation and parole and written consent of [your son's] custodial parents or if he is over the age of 18 years.

¶ 6. Campbell filed a postconviction motion challenging the sentence imposed on remand. Campbell argued the State breached the plea agreement by failing to recommend initial confinement of no more than five to seven years. Campbell also argued the prosecutor's argument at the resentencing hearing undermined the State's recommendation by implying that Campbell deserved a longer sentence. Campbell sought plea withdrawal or, in the alternative, resentencing before a different judge. Campbell also contended the sentencing court lacked legal authority to impose the conditional no-contact order. The circuit court denied Campbell's postconviction motion following an evidentiary hearing. Campbell now appeals.

## DISCUSSION

### I. Breach of the plea agreement

■■■■

¶ 7. A defendant has a constitutional right to the enforcement of a negotiated plea agreement. *State v. Smith,* 207 Wis. 2d 258, 271, 558 N.W.2d 379 (1997).

However, not all conduct that deviates from the precise terms of a plea agreement constitutes a breach entitling the defendant to relief. *State v. Deilke*, 2004 WI 104, ¶ 13, 274 Wis. 2d 595, 682 N.W.2d 945. Rather, a defendant who alleges the State has breached a plea agreement must show, by clear and convincing evidence, that a breach occurred and that the breach is material and substantial. *Id.* A breach is material and substantial if it "violates the terms of the agreement and deprives the defendant of a material and substantial benefit for which he or she bargained." *State v. Bowers*, 2005 WI App 72, ¶ 9, 280 Wis. 2d 534, 696 N.W.2d 255. Because the facts of this case are undisputed, whether the State materially and substantially breached the plea agreement is a question of law that we review independently. *See State v. Wills*, 193 Wis. 2d 273, 277, 533 N.W.2d 165 (1995).

¶ 8. Campbell concedes that, because his counsel did not object to the prosecutor's alleged breaches of the plea agreement, Campbell has forfeited his right to challenge those breaches directly on appeal. *See State v. Howard*, 2001 WI App 137, ¶¶ 12, 21, 246 Wis. 2d 475, 630 N.W.2d 244. Campbell instead contends his counsel's failure to object to the breaches constituted ineffective assistance of counsel. To establish ineffective assistance of counsel, a defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). If a defendant fails to prove that a material and substantial breach of the plea agreement occurred, counsel's failure to object is not ineffective assistance. *Bowers*, 280 Wis. 2d 534, ¶¶ 20–21.

### A. The State's failure to recommend five to seven years' initial confinement

██

¶ 9. Campbell first argues the State breached the plea agreement by failing to recommend an initial confinement term of five to seven years at the resentencing hearing. We conclude Campbell has failed to prove that the State's conduct materially and substantially breached the plea agreement. Four factors, in combination, lead us to our conclusion.

¶ 10. First, the prosecutor's recitation of the plea agreement at resentencing involved a mere omission of one of the agreement's terms. The prosecutor correctly stated the State was recommending a twenty-year sentence, but he neglected to mention its recommendation that only five to seven of those years be spent in initial confinement. The prosecutor did not affirmatively contradict a term of the plea agreement. He did not, for instance, recommend a ten-year term of initial confinement.

¶ 11. Second, Campbell's counsel clarified the prosecutor's omission. During his sentencing argument, Campbell's counsel noted that "the plea bargain in this case was five to seven years in and the balance of twenty on extended supervision." There is no requirement that a plea agreement be presented to the court in any particular way. It may be presented by the prosecutor, by the defense, or by both. Here, the parties, in combination, accurately informed the court of the plea agreement's terms.

¶ 12. Third, the prosecutor did not dispute Campbell's counsel's clarification of the plea agreement. One would expect the prosecutor to have spoken up if the State did not agree with the defense's statement.

The only reasonable interpretation of the prosecutor's silence is that the State agreed with the sentence recommendation as stated by Campbell's attorney.

¶ 13. Fourth, the court was fully aware of the plea agreement's terms before it resentenced Campbell. At the hearing on Campbell's postconviction motion, the court stated:

> It appears clear the district attorney did not mention in the second sentencing hearing the five to seven years. But I will place on the record, I knew all about it. Before the second sentencing hearing, I read the transcript from the first hearing. I read both presentence investigations. I was well aware. I also read the plea questionnaire, basically all the file relating to the first sentencing process.
>
> So I clearly understood what the plea agreement was whether or not the district attorney said five to seven years. This was not like I didn't know about it. I knew about it. I had it squarely in mind. I regarded that as the recommendation of the district attorney's office. I understood it was five to seven years confinement on a twenty-year total sentence.
>
> [Defense counsel] told me about that too on the record. I've already said he didn't have to tell me because I knew it already, but he again reaffirm[ed] that at the time of the sentencing hearing.

Before resentencing Campbell, the court reviewed the original sentencing transcript, as well as the plea questionnaire, both of which accurately set forth the plea agreement's terms. The terms were "reaffirm[ed]" by Campbell's counsel at the resentencing hearing. The court was clearly aware of the plea agreement's terms, rendering any breach by the State merely technical, not material and substantial.

¶ 14. Campbell argues the court's awareness of the plea agreement's terms is immaterial because "it was the *recommendation,* not the judge's mere awareness of the terms of the agreement, which was the principal benefit for which Campbell bargained." Campbell's argument places semantics over substance. Moreover, even if the prosecutor did not explicitly recommend five to seven years of initial confinement at resentencing, the court "regarded that as the recommendation of the district attorney's office."

## B. *The State's argument at the resentencing hearing*

¶ 15. Campbell next argues the State breached the plea agreement because the prosecutor's argument at resentencing undermined the State's sentence recommendation. According to Campbell, "Nearly every word of the prosecutor's resentencing argument created the distinct impression that the prosecutor believed Campbell deserved far more than the five-to-seven years of initial confinement he was obliged to recommend."

¶ 16. Campbell objects to a number of the prosecutor's remarks. For instance, the prosecutor commented on the seriousness of the offense, stating, "I can't think of a more, short of a homicide or physically injuring a child, a more horrific offense and more damaging offense committed against one's own child." The prosecutor also commented on two letters Campbell had sent to his daughter's therapist, stating that Campbell issued a "threat and ultimatum" to the therapist and that Campbell's tone was "manipulative" and "devious." Commenting on Campbell's character, the prosecutor asserted Campbell demonstrated "absolutely no remorse," "no empathy," and "no accountability for

his behavior." Addressing the mental health informa-
tion contained in the presentence investigation, the
prosecutor stated, "Clearly, [Campbell has] some very
serious sexuality issues, very serious boundary issues to
say the least." Finally, the prosecutor argued the need to
protect the public from Campbell was "very high" and
contended, "His daughter needs to be protected from
him for as long as can be humanly possible."

¶ 17. While a prosecutor need not enthusiastically
recommend a plea agreement, he or she "may not
render less than a neutral recitation of the terms of the
plea agreement." *State v. Poole*, 131 Wis. 2d 359, 364,
394 N.W.2d 909 (Ct. App. 1986). "[T]he State may not
accomplish through indirect means what it promised
not to do directly, and it may not covertly convey to the
trial court that a more severe sentence is warranted
than that recommended." *State v. Hanson*, 2000 WI App
10, ¶ 24, 232 Wis. 2d 291, 606 N.W.2d 278. However, the
State may discuss negative facts about the defendant in
order to justify a recommended sentence within the
plea agreement's parameters. *State v. Naydihor*, 2004
WI 43, ¶ 24, 270 Wis. 2d 585, 678 N.W.2d 220. Our
supreme court has observed:

> The State must balance its duty to convey relevant
> information to the sentencing court against its duty to
> honor the plea agreement. Thus, as the court of appeals
> has written, the State must walk "a fine line" at a
> sentencing hearing. A prosecutor may convey informa-
> tion to the sentencing court that is both favorable and
> unfavorable to an accused, so long as the State abides
> by the plea agreement. That line is fine indeed.

*State v. Williams*, 2002 WI 1, ¶ 44, 249 Wis. 2d 492, 637
N.W.2d 733 (footnote omitted).

██

¶ 18. The prosecutor did not step over the "fine line" in this case. At the evidentiary hearing on Campbell's postconviction motion, the circuit court noted:

> It was a serious case. Five to seven years out of somebody's life is a serious sentence. A twenty-year sentence is a serious sentence. So it could have been zero. So for the district attorney to point out the serious nature of the case is not inconsistent with him arguing for a twenty-year sentence with five to seven years confinement. He never asked for more. He never suggested that I jump the plea agreement.

We agree with the circuit court that the prosecutor's remarks did not undermine the State's sentence recommendation. Consistent with the plea agreement, the prosecutor argued for a twenty-year sentence. The prosecutor's remarks undoubtedly carried with them an implied argument for a significant sentence, but, as the trial court noted, a twenty-year sentence is just that.

¶ 19. Campbell has failed to prove that the State materially and substantially breached the plea agreement. Consequently, Campbell cannot establish that his counsel was ineffective by failing to object to the State's conduct. *See Bowers*, 280 Wis. 2d 534, ¶¶ 20–21.

## II. Conditional no-contact order

¶ 20. Campbell next contends the circuit court erred by ordering that Campbell have no contact with his son until Campbell fulfills certain requirements, including completion of sex offender treatment. *See supra*, ¶ 5.

■

¶ 21. Campbell first argues the court had no legal authority to impose this condition during his term of initial confinement. Campbell notes that, generally, a sentencing court may not impose conditions that apply during the confinement portion of a defendant's sentence. *State v. Gibbons*, 71 Wis. 2d 94, 99, 237 N.W.2d 33 (1976). Campbell argues that, absent a specific statute granting the court authority to prohibit him from contacting his son during his initial confinement term, the conditional no-contact order is invalid. *See Grobarchik v. State*, 102 Wis. 2d 461, 467, 307 N.W.2d 170 (1981) ("If the authority to fashion a particular criminal disposition exists, it must derive from the statutes."). Campbell also contends the no-contact provision is not a valid condition of his extended supervision because it is not "reasonable and appropriate." *See State v. Koenig*, 2003 WI App 12, ¶ 7, 259 Wis. 2d 833, 656 N.W.2d 499 (stating that a sentencing court has broad discretion to impose conditions of extended supervision, as long as they are reasonable and appropriate).

■■■■■■■

¶ 22. We conclude the circuit court had statutory authority to impose the no-contact provision as a condition of Campbell's entire sentence under Wis. Stat. § 973.049(2),[1] which provides:

> When a court imposes a sentence on an individual or places an individual on probation for the conviction of a crime, *the court may prohibit the individual from contacting victims* of, or co-actors in, a crime considered at sentencing *during any part of the individual's sen-*

---

[1] All references to the Wisconsin Statutes are to the 2007–08 version unless otherwise noted.

*tence or period of probation* if the court determines that the prohibition would be in the interest of public protection. *For purposes of the prohibition, the court may determine who are the victims of any crime considered at sentencing.* (Emphasis added.)

The interpretation of a statute is a matter of law that we review independently. *State v. Fischer*, 2010 WI 6, ¶ 15, 322 Wis. 2d 265, 778 N.W.2d 629. Statutory interpretation begins with the language of the statute. *State ex rel. Kalal v. Circuit Court for Dane Cnty.*, 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. If the meaning of the words in the statute is plain, the analysis goes no further. *Id.*

¶ 23. WISCONSIN STAT. § 973.049(2) plainly allows a sentencing court to prohibit a defendant from contacting victims of a crime considered at sentencing. The statute clearly states the court may impose this prohibition during any part of the defendant's sentence. *Id.* The statute also grants the court discretion to determine who is a victim of a crime considered at sentencing. *Id.*

¶ 24. Thus, the operative question is whether the circuit court properly exercised its discretion when it determined Campbell's son was a "victim" of the crime for which Campbell was sentenced. The court reasoned:

[A]ny time one child in the family is touched as a victim I think it affects the entire family in terms of the entire family having issues to deal with, and just the fact that the father is a sex offender, regulating that contact in an appropriate fashion I think is a legitimate goal . . . .

While the court did not explicitly state the facts it utilized from the record or the legal standard it applied, those omissions do not necessarily render its decision erroneous. We may independently search the record to

support the court's exercise of discretion. *Stan's Lumber, Inc. v. Fleming*, 196 Wis. 2d 554, 573, 538 N.W.2d 849 (Ct. App. 1995).

¶ 25. Campbell was convicted of first-degree sexual assault of a child based on allegations that he abused his daughter. The police reports attached to the criminal complaint established that Campbell exposed his son to the sexual abuse of his daughter. Campbell's daughter told a social worker that Campbell sexually assaulted her while her little brother was home. She also told the social worker that her little brother would sometimes come into the room while the sexual assault was occurring.

¶ 26. The potential emotional harm associated with observing Campbell's sexual misconduct is sufficient to make his son a victim of the crime for purposes of WIS. STAT. § 973.049(2). Furthermore, we agree with the circuit court that, by allowing his son to witness the sexual assaults, Campbell has put his son at risk of "modeling" this behavior and growing up to become sexually abusive. Accordingly, because the circuit court could reasonably conclude Campbell's son was a victim of Campbell's crime, § 973.049(2) gave the circuit court legal authority to impose the no-contact provision as a condition of Campbell's entire sentence, both the initial confinement and extended supervision portions.

¶ 27. The State cites a number of other facts which it contends make Campbell's son a victim of the crime for purposes of WIS. STAT. § 973.049(2). For instance, the State notes that Campbell's sisters told police Campbell regularly left sex toys and pornographic materials around his apartment, in plain view and within reach of the children. The State also points out that Campbell took both children with him to shop for sex toys. Additionally, when police searched Campbell's apartment

they found knives, dangerous chemicals, an uncased shotgun, and a fuel canister containing "Coleman fuel," all within the children's reach.

¶ 28. However, the statute is restricted to a victim "of any crime considered at sentencing." The facts cited by the State, while indicative of disgusting conduct, are not related to the crime for which Campbell was sentenced—first-degree sexual assault of his daughter. Thus, that Campbell exposed his son to knives, chemicals, and sexually explicit materials does not make his son a victim of the crime for which Campbell was sentenced. Rather, Campbell's son is a victim of that crime because he witnessed the abuse of Campbell's daughter.

¶ 29. At the end of his brief, Campbell notes that his relationship with his son is "protected by the Due Process clause" and that "[f]or all practical purposes, the court's 'no-contact' order will essentially terminate Campbell's parental rights . . . without affording [him] the due process protections normally associated with the termination of one's parental rights." To the extent Campbell is arguing that the circuit court violated his constitutional right to due process, his argument is undeveloped and we decline to address it. *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992). Additionally, Campbell did not raise this argument at the trial court level, and we generally do not consider issues raised for the first time on appeal. *See Evjen v. Evjen*, 171 Wis. 2d 677, 688, 492 N.W.2d 361 (Ct. App. 1992).

*By the Court.*—Judgment and order affirmed.

¶ 30. BRUNNER, J. (*concurring*). I write separately to address the court's discussion of the State's

106

failure to recommend five to seven years' initial confinement. Majority, ¶¶ 9–14. For the reasons I stated in my dissent in *State v. Huck*, No. 2008AP3043–CR, unpublished slip op. ¶¶ 16–23 (WI App Sept. 15, 2009), I regard the State's omission as a material and substantial breach of the plea agreement. In short, a reasonable defendant expects the district attorney to place the power and influence of his or her office behind the sentencing recommendation. A prosecutor's failure to endorse, or even mention, a component of that recommendation on the record deprives the defendant of a material and substantial benefit of his or her bargain.

¶ 31. I concur with the mandate, however, because unlike the error in *Huck*, the error in this case was harmless. Campbell was ordered resentenced as a result of his earlier appeal. *See State v. Campbell*, No. 2008AP2065–CR, unpublished slip op. (WI App May 5, 2009). At Campbell's first sentencing hearing before Judge Wing, the prosecutor stated he was recommending five years' initial confinement. Although the State omitted this recommendation at Campbell's resentencing before Judge Duvall, the court indicated it "did read the original sentencing transcript . . . because I view this as a kind of a continuation of that original sentencing hearing." Because Judge Duvall was aware that the State was on the record as supporting the sentencing recommendation, resentencing would serve no purpose here.