**COURT OF APPEALS
DECISION
DATED AND FILED**

**January 24, 2023**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP142-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2020CF123

IN COURT OF APPEALS
DISTRICT III

---

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

NICHOLAS JOSEPH MEYER,

DEFENDANT-APPELLANT.

---

APPEAL from a judgment of the circuit court for Oconto County: JAY N. CONLEY, Judge. *Affirmed.*

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Nicholas Meyer was convicted, upon his no-contest pleas, of first-degree sexual assault of a child (sexual contact with a

person under age thirteen) and causing mental harm to a child. The circuit court sentenced Meyer to a total of twenty-six years' initial confinement followed by twenty years' extended supervision. Meyer appeals, arguing that he is entitled to resentencing because the prosecutor breached the plea agreement during her sentencing argument. Although this is a close case, we conclude that the prosecutor's comments did not constitute a material and substantial breach of the plea agreement. We therefore affirm.

## BACKGROUND

¶2 The State charged Meyer with five counts: three counts of first-degree sexual assault of a child (contact with a person under age thirteen), one count of attempted sexual assault of a child under age sixteen, and one count of causing mental harm to a child. The complaint alleged that in June 2020, Edward[1] told law enforcement that Meyer had sexually assaulted him during the July 4th weekend in 2013, when Edward was twelve years old. Edward reported that his family was staying at a cottage that weekend. On Saturday night at about 9:00 p.m., Edward, his fourteen-year-old sister, and Meyer all went into a tent to go to sleep. Inside the tent, Meyer repeatedly asked Edward's sister for a "blow job," and each time she told Meyer "no." Edward was afraid for his sister, so he told her to go sleep in the cottage, where their parents were sleeping.

¶3 After Edward's sister left the tent, Meyer started asking Edward for a "blow job." Edward was afraid and tried to leave the tent, but Meyer wrapped

---

[1] Pursuant to the policy underlying WIS. STAT. RULE 809.86(4) (2019-20), we use a pseudonym when referring to the victim in this case. All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

his arms around Edward and pulled him back inside. Meyer told Edward that if he did not give Meyer a "blow job," Meyer would make Edward's life "a living hell." Meyer then pulled down his own pants and forced Edward to perform oral sex on him. Thereafter, Meyer forced Edward to perform oral sex on him again, while Meyer performed oral sex on Edward. Meyer then inserted his penis into Edward's anus. Afterward, Meyer told Edward that if he ever told anyone what had happened, Meyer would make Edward's life "a living hell."

¶4 Pursuant to a plea agreement, Meyer pled no contest to one of the three first-degree sexual assault of a child charges and to the causing mental harm to a child charge. The remaining charges were dismissed and read in. The plea agreement required the parties to make a joint sentencing recommendation of ten years' initial confinement followed by ten years' extended supervision, consecutive to any other sentence.

¶5 The circuit court accepted Meyer's no-contest pleas, found him guilty of the relevant offenses, and ordered a presentence investigation report (PSI). The PSI author concluded that a "lengthy term of incarceration in the Wisconsin State Prison" was necessary. On the first-degree sexual assault of a child charge, the PSI recommended thirteen to sixteen years' initial confinement followed by seven to ten years' extended supervision. On the causing mental harm to a child charge, the PSI recommended three to four years' initial confinement followed by three to four years' extended supervision.

¶6 At Meyer's sentencing hearing, the circuit court reminded the parties that "[t]here are written plea negotiations." The court stated that "the plea negotiations are very bare boned and I expect them to be complied with to the letter, all right?" The prosecutor replied, "Of course." The court then asked the

prosecutor, "[W]hat is your recommendation to the Court? What are you recommending and tell me the basis for it?" The prosecutor responded:

> I am recommending the ten years of confinement in the Wisconsin State Prison followed by ten years of extended supervision.
>
> That is our agreement, and I'm not going to deviate [from] it because I can't and because I wouldn't anyway. That's my word, but I think it is appropriate to call attention to the fact that this is a very serious crime and the maximum penalty is sixty years for [the first-degree sexual assault of a child charge] with forty years of prison and twelve years for the [causing mental harm to a child charge] with seven years of imprisonment.[2]
>
> I think that illustrates very nicely for all parties concerned just how seriously our community and our state takes these types of crimes, and I believe that's because they can cause the damage that you've read about in this PSI report and did cause that damage.

¶7 The prosecutor also commented that when she "charged this case," she "knew very little about Mr. Meyer except for his one prior incident with possession of child pornography that landed him in prison for a substantial period of time." The prosecutor then stated, "[R]eading the PSI was shocking. I had no idea about the entire whole past of Mr. Meyer." In particular, the prosecutor emphasized that the PSI showed a "pattern of behavior" and indicated that the incident involving Edward was not "an isolated incident of sexual assault." The prosecutor then discussed the other allegations of child sexual assault detailed in

---

[2] In actuality, the maximum sentence for the causing mental harm to a child charge was twelve years and six months, consisting of seven years and six months' initial confinement followed by five years' extended supervision. *See* WIS. STAT. §§ 939.50(3)(f), 948.04(1), 973.01(2)(b)6m. During the plea hearing, Meyer confirmed that he understood the correct maximum sentence for the causing mental harm to a child charge. Meyer does not argue on appeal that any error arises from the prosecutor's misstatement of the maximum sentence during her sentencing remarks.

the PSI. The prosecutor noted that Meyer had previously received sex offender treatment while in prison, but "we don't know at this point in time whether and to what extent that counseling is going to serve him."

¶8 The prosecutor next discussed Meyer's problems with substance abuse and emphasized that even when Meyer is "heavily supervised, he finds a way to indulge in whatever he wants to do." The prosecutor acknowledged that Meyer had been sexually abused as a child, but she argued that "because of what happened to him … he knew what the result of that type of trauma would likely be for his own victims, but he did it anyway." The prosecutor further argued that based on Meyer's pattern of sexual assaults, he was "likely to offend again because he can't control himself."

¶9 The prosecutor then asserted that because past treatment and counseling had not succeeded in "get[ting Meyer] on the right path," the "only option" was to "start considering how do we protect the community from Mr. Meyer[.]" The prosecutor concluded her sentencing argument by stating:

> The agent [who authored the PSI] says that a lengthy term of incarceration in the Wisconsin State Prison is necessary for Mr. Meyer at this time primarily to allow for protection of the public, but also to allow for additional sexual offender, criminal thinking, and AODA treatment as may be necessary.
>
> It is clear that the State agrees with that assessment. Based upon just the record I have—the limited record I had at the beginning of this case knowing only of this offense and the child pornography offense, but that assessment is only fortified by the things we see here before us in the PSI.
>
> So the State has agreed to recommend ten years of incarceration in the Wisconsin State Prison followed by ten years of extended supervision. The State believes that incarceration and supervision of a very substantial period of time is absolutely necessary to protect the public from any

5

further victimization by Mr. Meyer and frankly probably to protect Mr. Meyer from himself.

I know that he has also struggled with some things, his addictions of various types. One can only hope that a significant time away from the public will protect both him—both them and him.

So that is the State's recommendation, and those are the reasons therefore.

¶10 Meyer's attorney then objected, asserting he "believe[d]" that the State "may have breached the plea agreement." Counsel conceded that the prosecutor had "correctly stated the joint recommendation." He argued, however, that the prosecutor "stated quite clearly that [she] did not have the benefit of all of the history mentioned in the PSI," and the prosecutor's sentencing argument "illustrated to me that the State believes [Meyer is] far more dangerous and vicious than what the State had believed when they agreed to this plea recommendation." Counsel also argued that the State "acknowledge[d] that the PSI recommends a lengthy period of incarceration. The State even claimed that the information fortified that recommendation, and I'm quite certain the State understands and knows the PSI recommends an even longer period of time than what we jointly recommended."

¶11 The circuit court overruled defense counsel's objection without further comment. Defense counsel then made his sentencing argument, and Meyer exercised his right of allocution. On the first-degree sexual assault of a child charge, the court sentenced Meyer to twenty-six years' initial confinement followed by twenty years' extended supervision. On the causing mental harm to a child charge, the court imposed a concurrent sentence of seven years and six months' initial confinement followed by five years' extended supervision. Meyer

now appeals, arguing that he is entitled to resentencing because the prosecutor breached the plea agreement during her sentencing argument.

## DISCUSSION

¶12    A criminal defendant has a due process right to the enforcement of a negotiated plea agreement. *State v. Williams*, 2002 WI 1, ¶37, 249 Wis. 2d 492, 637 N.W.2d 733. A defendant who alleges that the State has breached a plea agreement must show, by clear and convincing evidence, that a breach occurred and that the breach was material and substantial. *State v. Campbell*, 2011 WI App 18, ¶7, 331 Wis. 2d 91, 794 N.W.2d 276 (2010). "A material and substantial breach is a violation of the terms of the agreement that defeats the benefit for which the accused bargained." *Williams*, 249 Wis. 2d 492, ¶38. Because the facts of this case are undisputed, whether the State materially and substantially breached the plea agreement is a question of law that we review de novo. *See Campbell*, 331 Wis. 2d 91, ¶7.

¶13    A prosecutor who fails to present a negotiated sentence recommendation to the circuit court breaches the plea agreement. *Williams*, 249 Wis. 2d 492, ¶38. Furthermore, while a prosecutor need not enthusiastically recommend a negotiated sentence recommendation, he or she "may not render less than a neutral recitation" of the plea agreement's terms. *Campbell*, 331 Wis. 2d 91, ¶17 (citation omitted). In other words, "the State may not accomplish through indirect means what it promised not to do directly, and it may not covertly convey to the trial court that a more severe sentence is warranted than that recommended." *State v. Hanson*, 2000 WI App 10, ¶24, 232 Wis. 2d 291, 606 N.W.2d 278 (1999). The State may, however, discuss negative facts about the defendant in order to justify a recommended sentence within the plea agreement's parameters.

7

*Campbell*, 331 Wis. 2d 91, ¶17. In fact, the State has a duty to convey relevant information to the sentencing court, which the State must balance against its duty to honor the plea agreement. *Williams*, 249 Wis. 2d 492, ¶44. Accordingly, the State must walk a "fine line" at sentencing when required by a plea agreement to make a specific sentence recommendation. *Id.* (citation omitted).

¶14 Meyer argues that the prosecutor stepped over this "fine line" during her sentencing remarks. He concedes that the prosecutor "cited the correct joint recommendation at the start of sentencing." He argues, however, that the prosecutor then "repeatedly undermined the recommendation with qualified language and references to the PSI's harsher recommendation." In particular, he faults the prosecutor for stating, immediately after she recited the agreed-upon recommendation: "That is our agreement, and I'm not going to deviate [from] it because I can't and because I wouldn't anyway. That's my word, but …." He notes that the prosecutor then listed the maximum penalties for the offenses—which exceeded the parties' joint recommendation—and described the aggravating facts of this case.

¶15 Meyer further emphasizes that the prosecutor made comments indicating that she was unaware of the negative information about Meyer's past conduct, as referenced in the PSI, when she charged Meyer. In addition, Meyer cites the prosecutor's argument that the PSI showed a pattern of behavior that made Meyer particularly dangerous to the public. The prosecutor subsequently stated it was "clear" that the State agreed with the PSI author's "assessment" that a "lengthy term of incarceration in the Wisconsin State prison" was necessary. While the prosecutor reiterated that the State had "agreed to recommend ten years of incarceration in the Wisconsin State Prison followed by ten years of extended supervision," the prosecutor then stated that the State "believes that incarceration

and supervision of a very substantial period of time is absolutely necessary to protect the public." Meyer asserts that these comments amounted to an "explicit adoption of the [PSI author's] harsher sentencing recommendation."

¶16 Meyer argues that this case is comparable to *Williams*. The plea agreement in *Williams* required the State to recommend three years of probation for failure to pay child support, with sixty days in jail as a condition of probation. *Williams*, 249 Wis. 2d 492, ¶24. The circuit court ordered a PSI, which recommended "a medium term of imprisonment." *Id.*, ¶25.

¶17 During her sentencing remarks, the prosecutor informed the court that when Williams entered his plea, "we had told the Court … that we would be recommending … that he be placed on probation for a period of three years" with sixty days of conditional jail time. *Id.*, ¶26. However, the prosecutor then indicated that her impression of Williams had changed after reading the PSI and speaking to Williams' ex-wife. *Id.* After recounting Williams' ex-wife's allegations, the prosecutor emphasized that the PSI author had repeatedly opined that Williams "needs to go to prison." *Id.* Williams' attorney then objected. *Id.*, ¶27. In response, the prosecutor "explicitly stated that she was not changing her recommendation and that she was only relaying information from the [PSI author] because the [PSI author] was not present." *Id.*, ¶29.

¶18 Our supreme court concluded that the prosecutor's sentencing argument breached the plea agreement by "impl[ying] that had the State known more about the defendant, it would not have entered into the plea agreement." *Id.*, ¶47. The court cited the prosecutor's comments indicating that she had learned new information about Williams from the PSI and from speaking to his ex-wife. *Id.*, ¶48. The court stated those comments showed that the State had "adopted"

9

this negative information as "its own opinion of the defendant." *Id.* The court explained that "[t]he impression that the State was backing away from the plea agreement was furthered by" the prosecutor's statement that she had previously told the court that she "*would be*" recommending a three-year term of probation with sixty days of conditional jail time. *Id.*, ¶49. The court reasoned that the words "would be" suggested "that a change of the State's plans would be revealed." *Id.* The court further concluded that the prosecutor's ultimate "affirmation of the plea agreement was not adequate to overcome the prosecutor's covert message to the circuit court that a more severe sentence was warranted than that which had been recommended." *Id.*, ¶51. While acknowledging that it was a "close question," the court stated the "overall impression from reading the entire record of the sentencing hearing is … that the State's comments affirming the plea agreement were too little, too late." *Id.*, ¶52.

¶19 Meyer argues that this case is analogous to *Williams* because, in both cases, the prosecutor: (1) used qualifying language when reciting the agreed-upon sentence recommendation; (2) indicated that she had learned new information about the defendant that cast doubt on the wisdom of the plea agreement; and (3) adopted negative information about the defendant from the PSI as her own opinion.

¶20 In response, the State argues that *Williams* is distinguishable. The State contends that the prosecutor in *Williams* "essentially adopted the PSI writer's view of the case and then conveyed the writer's recommended sentence, which was much harsher than the State's promised recommendation." Conversely, the State argues that in this case, the prosecutor merely relayed information from the PSI to the circuit court and then agreed with the PSI author's "assessment" that a "lengthy term of incarceration" was necessary. The State

emphasizes that the prosecutor did not adopt or recommend the *specific* sentence recommended by the PSI author. The State further emphasizes that the prosecutor twice stated that she was recommending ten years' initial confinement and ten years' extended supervision, as required by the plea agreement. While the prosecutor also asserted that a "very substantial" sentence was necessary, the State argues that a sentence consisting of ten years' initial confinement followed by ten years' extended supervision *is* a substantial sentence. Finally, the State asserts that unlike in *Williams*, the circuit court in this case expressly directed the prosecutor to justify her sentence recommendation, asking her, "What are you recommending *and tell me the basis for it?*" (Emphasis added.) The State suggests that under these circumstances, the prosecutor's sentencing arguments were necessary to justify the parties' joint recommendation.

¶21 Rather than being like *Williams*, the State argues that this case is akin to *State v. Wood*, 2013 WI App 88, 349 Wis. 2d 397, 835 N.W.2d 257. In *Wood*, the plea agreement required the State to recommend probation, but the prosecutor was free to argue with respect to the length and conditions of probation. *Id.*, ¶2. At sentencing, the prosecutor twice stated that he had learned "a number of alarming things" about Wood's past behavior when reading the PSI. *Id.*, ¶4. The prosecutor then discussed the "alarming" information from the PSI in detail. *Id.* Consistent with the plea agreement, however, the prosecutor ultimately recommended that the court place Wood on probation for five years with one year of conditional jail time. *Id.*

¶22 On appeal, this court concluded that while the prosecutor "did express 'alarm[]' and 'concern[]' regarding information he 'learned' in reading the PSI," those remarks, taken in the context of the entire sentencing argument, did not constitute a covert argument that the court should sentence Wood to a more

11

severe sentence than what the State had agreed to recommend. *Id.*, ¶¶11-13. We noted that the prosecutor did not "mention the harsher sentence recommended by the PSI author." *Id.*, ¶11. We also observed that the prosecutor articulated the State's recommendation "without equivocation, clearly explaining why the recommendation was appropriate in light of the record before the court." *Id.* We rejected Wood's complaint that the prosecutor had "highlight[ed] all the negative portions of the PSI," explaining that the prosecutor was not required to make positive comments about Wood to avoid breaching the plea agreement. *Id.*, ¶12. Ultimately, we concluded that the prosecutor's comments "were appropriate in light of the sentence he was recommending, which included a lengthy period of probation and a year of confinement." *Id.*, ¶13.

¶23 The State argues that here, as in *Wood*, "the prosecutor clearly stated the agreed-upon recommendation, despite the fact that the information from the PSI was overwhelmingly negative." We do not agree with the State that this case is directly analogous to *Wood*. Instead, we conclude that this case falls somewhere between *Williams* and *Wood*. Nevertheless, although this is a close case, we ultimately agree with the State that the prosecutor's remarks did not materially and substantially breach the plea agreement.

¶24 First, we note that the prosecutor twice stated the agreed-upon sentence recommendation during her sentencing remarks. Although the prosecutor included some qualifying language when initially reciting the recommendation—stating "I'm not going to deviate [from the recommendation] because I *can't*"—the prosecutor also stated, "I *wouldn't* [deviate] *anyway*. That's my word …." (Emphasis added.) This subsequent language indicated that the prosecutor stood by the State's recommendation and did not intend to deviate from it.

12

¶25 Second, while the prosecutor stated that she had learned new information about Meyer from the PSI, which she did not know at the time she charged him, and while the prosecutor discussed that negative information at length, nothing in the plea agreement prevented the prosecutor from referring to negative facts in the PSI during her sentencing remarks. Indeed, a plea agreement cannot "prohibit the state from informing the trial court of aggravating sentencing factors" or other "relevant information." *State v. Ferguson*, 166 Wis. 2d 317, 324, 479 N.W.2d 241 (Ct. App. 1991). Notably, while the prosecutor discussed the negative information from the PSI and recited the PSI author's recommendation for a "lengthy" period of incarceration, she did not reference the specific recommendation of the PSI author or state that the circuit court should follow the PSI author's specific recommendation. Nonetheless, this court has previously held that a prosecutor may refer to a PSI author's sentence recommendation in his or her sentencing remarks without breaching a plea agreement that requires the prosecutor to make a different recommendation. *See State v. Duckett*, 2010 WI App 44, ¶¶10, 18, 324 Wis. 2d 244, 781 N.W.2d 522.

¶26 Third, while the prosecutor stated that she "agreed" with the PSI author's "assessment" that a "lengthy term of incarceration" was necessary, and while she later stated that a "very substantial" sentence was warranted, those statements were not inconsistent with the prosecutor's recommendation of ten years' initial confinement followed by ten years' extended supervision. A twenty-year sentence *is* a lengthy and substantial sentence. *See Campbell*, 331 Wis. 2d 91, ¶¶16, 18 (concluding that a prosecutor who was required to recommend a twenty-year sentence did not breach the plea agreement by highlighting the seriousness of the defendant's conduct and arguing for a significant sentence because a twenty-year sentence *is* a significant sentence).

13

This fact distinguishes the instant case from *Williams*, where the prosecutor's remarks were clearly inconsistent with her agreement to recommend only three years of probation with sixty days of conditional jail time. *See Williams*, 249 Wis. 2d 492, ¶24.

¶27   Fourth, we note that at the beginning of the sentencing hearing, the circuit court specifically asked the prosecutor to justify her sentence recommendation. In the context of that request, it was appropriate for the prosecutor to reference the maximum sentences and discuss the negative information from the PSI in order to explain why she believed that a substantial sentence of ten years' initial confinement followed by ten years' extended supervision was appropriate.

¶28   For these reasons, we conclude that the prosecutor's challenged remarks, when considered in the context of the prosecutor's entire sentencing argument, did not constitute a material and substantial breach of the plea agreement. The prosecutor expressly recommended a sentence consisting of ten years' initial confinement followed by ten years' extended supervision, as required by the plea agreement, and her sentencing argument justified her request for that substantial sentence. Under these circumstances, the prosecutor's comments did not "defeat[] the benefit for which [Meyer] bargained." *See id.*, ¶38.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

14