COURT OF APPEALS
DECISION
DATED AND FILED

November 19, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP1134-CR**

Cir. Ct. No. 2021CF199

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

---

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

 V.

ERIC RICHARD SUSCHA,

    DEFENDANT-APPELLANT.

---

APPEAL from a judgment and an order of the circuit court for Sheboygan County: KENT R. HOFFMANN and NATASHA L. TORRY, Judges. *Affirmed*.

Before Neubauer, P.J., Gundrum, and Grogan, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM. Eric Richard Suscha appeals from a judgment convicting him of several serious child sex offenses entered upon his guilty pleas and an order denying his postconviction motion.[1]  Suscha asserts that he is entitled to withdraw his pleas based on a deficient plea colloquy pursuant to *State v. Bangert*, 131 Wis. 2d 246, 389 N.W.2d 12 (1986), and an alleged breach of the plea agreement by the prosecutor.  In the alternative, Suscha seeks resentencing based on the circuit court's alleged misunderstanding at sentencing that Suscha must be placed on lifetime supervision as a serious sex offender.  For the reasons that follow, we affirm Suscha's judgment of conviction and the denial of his postconviction motion.

## BACKGROUND

¶2     The State charged Suscha with 18 counts of crimes against children, including multiple counts of sexual exploitation of a child, repeated sexual assault of a child, soliciting a child for prostitution, and child enticement.  The charges were based on allegations made by five male victims who came forward to police and said that Suscha sexually abused the males over a several-year period.  The victims said that when they were between the ages of 13 and 16, Suscha sexually touched them, compelled them to sexually touch him, and paid them for naked photographs, explicit videos, and sexual favors.

¶3     Suscha waived his preliminary hearing, and the State filed an Information formally charging Suscha with 18 child sex offenses.  The State later filed an Amended Information in which it added eleven counts of possession of

---

[1] The Hon. Kent R. Hoffmann presided over the plea and sentencing hearings, and the Hon. Natasha L. Torry presided over the postconviction proceedings.

2

child pornography. It also amended several of the original counts to allow for the possibility of lifetime supervision under WIS. STAT. § 939.615(1)(b)1. and (2)(a) (2023-24).[2]

¶4 Pursuant to an agreement with the State, Suscha agreed to plead guilty to two counts of repeated sexual assault of a child (counts 2 and 9) and four counts of possession of child pornography (counts 19 to 22). The State agreed to dismiss outright three counts of soliciting a child for prostitution (counts 5, 11, and 16), two counts of fourth-degree sexual assault (counts 6 and 17), and solicitation of exposing genitals (count 7). The remaining 17 counts were to be dismissed and read in for sentencing and restitution. Finally, pursuant to the agreement, the State agreed to argue for a global sentence capped at 15 years of initial confinement and 12 years of extended supervision, lifetime supervision of Suscha as a serious sex offender, and other conditions of release.

¶5 At the plea hearing, the circuit court engaged in a thorough colloquy with Suscha. Before entering his plea, Suscha completed a written plea questionnaire and waiver of rights form with his attorney. The jury instructions for each offense to which he was pleading were attached to the plea questionnaire. For each offense, Suscha circled each element to confirm that he reviewed them with his attorney. The jury instruction for the repeated-acts offenses referred to sexual assault. Suscha was advised that "sexual assault" as charged included both "sexual intercourse" and "sexual contact" and trial counsel was satisfied that Suscha's actions fit within those definitions. However, the definitions of those terms were not attached to the plea questionnaire.

---

[2] All references to the Wisconsin Statutes are to the 2023-24 version.

¶6    At the plea hearing, when the circuit court asked Suscha whether he had any questions about the elements of any of his offenses, Suscha responded, "No," each time. However, the court did not specifically discuss the definitions of "sexual intercourse" or "sexual contact" during the colloquy after which it accepted Suscha's guilty pleas and dismissed the remaining counts consistent with the terms of the agreement.

¶7    At the sentencing hearing, all five of Suscha's victims and/or their representatives spoke of the tremendous harm that Suscha's sexual assaults caused to the victims and their families. Suscha also spoke, and the circuit court considered multiple letters on Suscha's behalf. The court sentenced Suscha to 15 years of initial confinement and 12 years of extended supervision on counts 2 and 9. It also imposed a consecutive global sentence on the possession of child pornography charges totaling 18 months of initial confinement and 2 years of extended supervision. Finally, the court imposed lifetime supervision based on Suscha's convictions of multiple serious sex offenses.

¶8    Suscha filed a postconviction motion seeking to withdraw his pleas to counts 2 and 9 for repeated sexual assault of a child under the age of 16. Suscha claimed that when he entered his pleas, he had not understood the definitions of "sexual contact" and "sexual intercourse" required for the three underlying offenses necessary to establish repeated sexual assault. He also claimed that the State breached the plea agreement by referencing at sentencing the factual bases for the six counts that were dismissed outright. Finally, Suscha argued that the circuit court erroneously exercised its discretion by ordering lifetime supervision without making findings to support that discretionary decision.

¶9     The postconviction court denied Suscha's postconviction motion after holding an evidentiary hearing at which both Suscha and his trial counsel testified.[3]  The court held that Suscha entered his pleas with a full understanding of the elements to which he was pleading; thus, no manifest injustice supported postconviction plea withdrawal.  The court also held that plea withdrawal was not warranted based on the alleged breach.  It found that the court was aware at the plea and sentencing hearings of the parties' intentions with respect to the counts that were dismissed outright and the State's mention of the facts had no impact on the sentence.  Finally, the postconviction court determined that the sentencing court soundly exercised its discretion in imposing lifetime supervision.  Suscha appeals.

## DISCUSSION

¶10    "When a defendant seeks to withdraw a guilty plea after sentencing, he [or she] must prove, by clear and convincing evidence, that a refusal to allow withdrawal of the plea would result in 'manifest injustice.'"  *State v. Brown*, 2006 WI 100, ¶18, 293 Wis. 2d 594, 716 N.W.2d 906 (citation omitted).  "One way for a defendant to meet this burden is to show that he [or she] did not knowingly, intelligently, and voluntarily enter the plea."  *Id.*  Accordingly, if a guilty plea is not made knowingly, intelligently, and voluntarily, the defendant "is entitled to withdraw the plea as a matter of right because such a plea 'violates fundamental due process.'"  *Id.*, ¶19 (citation omitted).

---

[3] Suscha did not assert ineffective assistance of trial counsel in his postconviction motion, nor does he so assert now.  His postconviction arguments related to his purported lack of understanding of the elements of counts 2 and 9, the State's alleged breach of the plea agreement, and lifetime supervision—the same issues he raises on appeal.

¶11 "Whether a plea is knowing, intelligent, and voluntary is a question of constitutional fact." *Id.* "We accept the circuit court's findings of historical and evidentiary facts unless they are clearly erroneous[,] but we determine independently whether those facts demonstrate that the defendant's plea was knowing, intelligent, and voluntary." *Id.*

¶12 In this case, Suscha challenges the knowing, intelligent, and voluntary nature of his plea by alleging a plea colloquy defect. *See id.*, ¶¶39-40. WISCONSIN STAT. § 971.08(1)(a) requires that the circuit court determine during a plea colloquy whether a plea "is made voluntarily with understanding of the nature of the charge[.]"

¶13 "To understand the nature of the charge, the defendant must be aware of all the essential elements of the crime." *State v. Jipson*, 2003 WI App 222, ¶9, 267 Wis. 2d 467, 671 N.W.2d 18. Suscha argues that the circuit court conducted a defective colloquy by failing to apprise him of the meaning of "sexual intercourse" or "sexual contact" and that he did not understand that element of the crime he committed. *See Bangert*, 131 Wis. 2d at 274; *Jipson*, 267 Wis. 2d 467, ¶¶9, 13 (noting that courts have crafted the purpose of the sexual contact to be an element of the offense of sexual assault of a child).

¶14 Neither the circuit court nor the State on appeal dispute that Suscha has established that a *Bangert* violation occurred because Suscha was not advised of the definition of "sexual contact" prior to entering his plea. On this point, we also agree. Nevertheless, we concur with the court's postconviction conclusion that the defect in the plea colloquy did not render Suscha's plea unknowing, unintelligent, and involuntary.

¶15 Here, evidence presented at the *Machner*[4] hearing, when viewed collectively, demonstrated by clear and convincing evidence that Suscha was aware of and understood the definitions of "sexual contact" or "sexual intercourse." Suscha further understood the charges against him as requiring the State to prove that his conduct was for the purpose of his sexual arousal or gratification or the victim's humiliation prior to entering his plea in this case. When addressing a *Bangert* violation, "[t]he State may utilize the entire [R]ecord to demonstrate [a defendant's] knowledge of the nature of his [or her] offense and of the constitutional rights he [or she] was waiving." *State v. Bollig*, 2000 WI 6, ¶53, 232 Wis. 2d 561, 605 N.W.2d 199; *see also Brown*, 293 Wis. 2d 594, ¶40 (discussing the evidence available to the State).

¶16 The Record before us fully supports our conclusion, as we explain, that Suscha fully understood the charges to which he was pleading. At the postconviction hearing on the motion, Suscha's trial counsel agreed that because counsel did not print out the elements and definitions under either WIS. STAT. §§ 948.01 or 948.02, he likely did not discuss those specific statutory elements or definitions with Suscha. However, counsel did testify that he was confident at the plea hearing that Suscha fully understood what he was pleading to based on the lengthy discussions counsel and Suscha had about both strategy and the plea offers. Suscha's counsel also testified that he discussed the concepts of sexual gratification and arousal with Suscha and that he would have discussed whether the facts alleged met the definition of sexual assault.

---

[4] *State v. Machner*, 92 Wis. 2d 797, 804, 285 N.W.2d 905 (Ct. App. 1979).

¶17 Counsel specifically testified regarding his discussions with Suscha about the requirement that the State prove that Suscha committed the offenses with the purpose of obtaining sexual gratification and arousal. Indeed, counsel printed out that definition and attached it to the plea questionnaire, where it appeared within the jury instruction for lifetime supervision for serious sex offenders. Counsel further testified that due to what Suscha admitted he had done with Victim 1, Suscha understood the statutory definitions of sexual contact or intercourse, that the acts alleged in the Criminal Complaint constituted the same, and that counsel ultimately supported a change of plea as to count 2 as a result of Suscha's admissions to counsel.

¶18 The same holds true for count 9—based on what Suscha told trial counsel he had done with the victim in that count, counsel believed that there was a factual basis for Suscha's change of plea as to that count as well. The postconviction court found that the circuit court "did properly accept the guilty plea[s] ... for counts 2 and 9[.]" It noted that it was "clear from the Record that [Suscha] understood the elements of the offenses that he pled guilty to[.]" It found that Suscha was "highly educated with both a high school and college degree," was 24-years old, "repeatedly indicated to the [circuit court] that he understood the elements of the offense and reviewed them with his trial counsel," who was "a well[-]respected and seasoned trial attorney[.]"

¶19 Additionally, as discussed above, Suscha circled each element of each charge on the jury instructions attached to the plea questionnaire, indicating that he reviewed that element. One of the elements of the repeated-sexual-assault-of-a-child charge was as follows: "The defendant committed at least three sexual assaults of (name of victim)." (Alterations in original.) When asked if he had any questions about the elements of the offenses, Suscha said no. While this fact alone

8

would not constitute affirmative evidence of knowledge, it nevertheless is a fact to be considered when determining if Suscha's plea was made freely, voluntarily, and intelligently.

¶20 Finally, neither the circuit court nor this court are required to accept outright Suscha's self-serving and, frankly, incredible statement that he did not understand the meaning of the terms "sexual contact" or "sexual intercourse" at the plea and sentencing hearings, instead believing that wrestling, horseplay, and "titty twisters" with his male "friends" was sufficiently depraved conduct to subject him to decades in prison. Given all of the above, the circuit court's findings of fact are not clearly erroneous. We therefore conclude that the State has met its burden to prove that Suscha understood the terms "sexual contact" or "sexual intercourse," and Suscha's plea was knowing, intelligent, and voluntary.

¶21 We also see no support in the Record for Suscha to withdraw his plea based on an alleged breach by the prosecutor of the plea agreement. Suscha argues that the State breached the plea agreement by referring at sentencing to some of Suscha's conduct underlying the six charges that were dismissed outright. At sentencing, defense counsel expressly confirmed that the parties were asking that the circuit court not consider the facts relating to those counts, and the State voiced no objection to that understanding. The postconviction court denied relief after the hearing because it found no indication that the State's mention of the facts underlying those counts affected the sentencing decision.

¶22 "[N]ot all conduct that deviates from the precise terms of a plea agreement constitutes a breach entitling the defendant to relief." *State v. Campbell*, 2011 WI App 18, ¶7, 331 Wis. 2d 91, 794 N.W.2d 276 (2010). The defendant must demonstrate a "material and substantial" breach, which is one that

violates the terms of the plea agreement and deprives the defendant of a material and substantial benefit for which he or she bargained. *Id.* Nothing in the Record would support a conclusion that the State's reference to the conduct relevant to the dismissed charges constitutes a material and substantial breach.

¶23 As an initial matter, we note that the prosecutor did make the agreed-upon sentencing recommendation of a global sentence comprised of 15 years of initial confinement and 12 years of extended supervision. In further keeping with the agreement, the prosecutor also argued for lifetime supervision of Suscha as a serious sex offender. The State also moved to dismiss outright the 6 promised charges and to dismiss and read in the remaining 17 charges, as agreed.

¶24 Moreover, testimony at the postconviction hearing established that the parties did not in fact have any agreement prior to Suscha's entry of his guilty pleas regarding how they would handle the facts underlying the dismissed-outright counts. At the postconviction hearing, counsel testified that he did not secure a promise from the prosecutor to not mention the dismissed-outright counts or to handle them in any particular way. Counsel reiterated that the prosecutor "didn't make any promises one way or the other about how he would handle" the dismissed-outright counts, but that he made clear that it was very important to Suscha that the dismissed-outright "counts are not part of sentencing[.]" Further, counsel did not object to the prosecutor's statements at sentencing, nor did counsel appear to feel the need to clarify or contextualize any of those alleged facts for the circuit court.

¶25 Given this Record, there is no factual support for the argument that the prosecutor breached the agreement by summarizing the facts in the Complaint, which covered multiple victims among the various counts. The State never

promised not to mention the dismissed-outright conduct or counts. Further, there is no dispute that the facts that the prosecutor mentioned were relevant to Suscha's character, the seriousness of his offenses, and the need to protect the public, and all were things that the circuit court could consider.

¶26 We turn finally to Suscha's argument on appeal that the circuit court erroneously exercised its discretion by ordering him placed on lifetime supervision as a serious sex offender, pursuant to WIS. STAT. § 939.615. As relevant here, § 939.615(2)(a) provides that a court may place an offender on lifetime supervision if it determines lifetime supervision "is necessary to protect the public." Suscha argues generally that the court failed to expressly make this determination on the Record during the sentencing hearing and failed to explain why placing him on lifetime supervision was necessary to protect the public. On the Record before us, however, we cannot conclude that the court erroneously exercised its discretion by failing to do so.

¶27 To explain further, the circuit court's sentencing remarks, when considered in their totality, show that the court properly exercised its discretion by ordering Suscha placed on lifetime supervision based on its findings regarding the need to protect the public. Moreover, the court's postconviction decision adequately explained the link between the court's sentencing remarks and its decision to place Suscha on lifetime supervision. We therefore affirm.

## CONCLUSION

¶28 In conclusion, the Record as a whole fails to support Suscha's request for a new trial or resentencing based on any deficiency in the plea colloquy or breach of the plea agreement by the State. Suscha has not established any manifest injustice warranting reversal. We further conclude that the Record shows

11

that the circuit court properly exercised its discretion by ordering lifetime supervision. While there may be some cases in which a court's sentencing remarks and postconviction decision are insufficient to support its decision regarding lifetime supervision, this case is not one of them. We therefore affirm Suscha's judgment of conviction and the order denying his motion for postconviction relief.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.