STATE of Wisconsin, Plaintiff-Respondent,

v.

Robert L. DUCKETT, Defendant-Appellant.†

Court of Appeals

*No. 2009AP958–CR. Submitted on briefs January 5, 2010
—Decided February 17, 2010.*

2010 WI App 44

(Also reported in 781 N.W.2d 522.)

† Petition for Review denied w/o costs on 7/21/10.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Michael K. Gould*, assistant state public defender, of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *J.B. Van Hollen*, attorney general, and *Eileen W. Pray*, assistant attorney general.

Before Fine, Kessler and Brennan, JJ.

¶ 1. BRENNAN, J. Robert L. Duckett appeals a judgment of conviction for first-degree reckless injury

while armed, and an order denying his postconviction motion. Duckett argues that the prosecutor's remarks during the sentencing hearing breached the parties' plea agreement, in violation of his right to due process. We affirm the circuit court.

BACKGROUND

¶ 2. On January 16, 2008, Duckett pled no contest to first-degree reckless injury while armed. At that time, Duckett and the State entered into a plea agreement. The State agreed to request a presentence investigation ("PSI") report and to recommend prison time, without any specific recommendation as to the length of the prison sentence. Duckett remained free to argue for probation with a stayed sentence.

¶ 3. At the sentencing hearing on February 26, 2008, the prosecutor began his recommendation as follows: "Your Honor, again, the [S]tate is recommending prison time here in this case. And the PSI, the recommendation from the PSI is for two to five years, followed by four to five years of extended supervision." The prosecutor then "highlight[ed] the aggravating and mitigating factors that the [S]tate [saw] in this case." The prosecutor set forth, in great detail, the crime and Duckett's lengthy criminal record, concluding, "[t]his is an aggravated case, and I think it's shocking, the defendant's responses to the questions in the PSI, how brazen his attitude is here. And I hope the [S]tate's highlighting of some of these factors here will be taken into account by the court." Following the parties' sentencing arguments, the circuit court imposed a ten-year sentence composed of six years' initial confinement and four years' extended supervision.

¶ 4. On January 23, 2009, Duckett filed a postconviction motion through new counsel, asserting that the

State had breached the plea agreement by explicitly referencing the PSI report's sentencing recommendation, and by following that reference with "a lengthy series of comments on the aggravated nature of the case." Duckett argued that by presenting its recommendation in that manner, the State implicitly but clearly conveyed to the court that the PSI report's sentencing recommendation was too low—in breach of the plea agreement's prohibition against recommending a particular sentence.

¶ 5.   The circuit court held an evidentiary hearing on the motion, at which both Duckett and his trial counsel testified. Trial counsel explained that he did not object to the prosecutor's sentencing remarks because he did not believe that they violated the plea agreement. Following the hearing, the circuit court denied Duckett's postconviction motion, holding that the State's remarks were merely informative and therefore did not constitute a breach of the plea agreement. Duckett appeals.

### STANDARD OF REVIEW

¶ 6.   Because Duckett's trial attorney did not object to the State's recommendation at the sentencing hearing, Duckett has forfeited[1] his right to direct review of the alleged plea agreement breach. *See State v.*

---

[1] While the parties and relevant case law use the word "waiver," we use the word "forfeiture" consistent with the terminology adopted by *State v. Ndina*, 2009 WI 21, ¶ 29, 315 Wis. 2d 653, 761 N.W.2d 612 ("Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right.") (internal quotation marks and citation omitted).

*Howard*, 2001 WI App 137, ¶ 12, 246 Wis. 2d 475, 630 N.W.2d 244. Therefore, we must review the case in the context of a claim for ineffective assistance of counsel. *Id.* First, we "consider whether the State breached the plea agreement." *Id.* "If there was a material and substantial breach, the next issues are whether [Duckett's] counsel provided ineffective assistance and which remedy is appropriate." *See id.* Whether the prosecutor's conduct constituted a material breach of the plea agreement is a question of law that we review *de novo. See State v. Naydihor*, 2004 WI 43, ¶ 11, 270 Wis. 2d 585, 678 N.W.2d 220.

### DISCUSSION

██

¶ 7.    The parties do not dispute that the State recommended prison as they agreed, and Duckett does not argue that the State *directly* breached the plea agreement. Instead, Duckett argues that the State *indirectly* breached the plea agreement during the sentencing hearing in two ways:    (1) by referencing the PSI report's sentencing recommendation; and (2) by describing the aggravating and mitigating factors, including Duckett's "shocking" lack of remorse. In response, the State asserts that the comments made by the prosecutor during the sentencing hearing were informational in nature, and thereby did not directly or indirectly breach the plea agreement. We agree with the State, and for that reason, conclude that trial counsel's representation was not deficient.

██

¶ 8.    "[A]n accused has a constitutional right to the enforcement of a negotiated plea agreement." *State v. Williams*, 2002 WI 1, ¶ 37, 249 Wis. 2d 492, 637 N.W.2d

733 ("[O]nce [a defendant] agrees to plead guilty in reliance upon a prosecutor's promise to perform a future act, the [defendant]'s due process rights demand fulfillment of the bargain."). A plea agreement is breached when a prosecutor fails to present the negotiated sentencing recommendation to the circuit court. *Id.*, ¶ 38. An actionable breach, however, "must not be merely a technical breach; it must be a material and substantial breach." *Id.* "A material and substantial breach is a violation of the terms of the agreement that defeats the benefits for which the [defendant] bargained." *Id.* Here, the question is whether the prosecutor's comments deprived Duckett of the benefit he bargained for—a prison term recommendation.

¶ 9. The Wisconsin Supreme Court has stated that a prosecutor has a duty to give the court relevant sentencing information but must do it in a way that honors the plea agreement: "the State must walk 'a fine line' at a sentencing hearing. A prosecutor may convey information to the sentencing court that is both favorable and unfavorable to [a defendant]," but must do so while also abiding by the terms of its agreement with the defendant. *Id.*, ¶ 44 (footnote omitted). "The State must balance its duty to convey relevant information to the sentencing court against its duty to honor the plea agreement." *Id.*

¶ 10. Here, the State properly conveyed relevant information to the court without depriving Duckett of the benefit of the prison recommendation he bargained for. It should be noted that a request for a PSI report was part of the parties' plea agreement. The court had the PSI report before it at the start of the sentencing hearing. Even before the prosecutor spoke, the court confirmed with Duckett's attorney that he had gone over the PSI report with Duckett. Then the prosecutor

gave his recommendation for prison, without specifying a length of time. Next, the prosecutor advised the court of the PSI report's sentencing recommendation and the aggravating and mitigating factors, including Duckett's "shocking" lack of remorse as shown in his answers to the PSI writer's questions. Finally, the prosecutor concluded by simply asking the court to take those factors into consideration. The prosecutor honored the plea agreement by: (1) recommending prison; (2) never giving *his* opinion as to the length of the sentence; (3) never implying that he agreed with the PSI report's recommended sentence length, or that he sought a longer sentence than the PSI report recommended; (4) giving the background information that he was duty-bound to provide; and (5) concluding his remarks with a neutral request that the court consider all the factors.

¶ 11.  Duckett concedes that the prosecutor was permitted to advise the court of aggravating and mitigating factors. While arguing that the prosecutor crossed the line when he described Duckett's comments in the PSI report as exhibiting a "shocking" lack of remorse, Duckett's counsel admitted at the postconviction hearing that the real issue was not the prosecutor's aggravating factor comments, but, "[t]he real problem, the big problem, is that mentioning of the specific [sentencing] recommendation that's in the [PSI report]." Duckett argued that by presenting its recommendation in that manner, the State implicitly conveyed to the court that the PSI report's sentencing recommendation was too low—in breach of the plea agreement's prohibition against recommending a particular sentence.

¶ 12.  Duckett relies on *Williams* to support his position. In *Williams*, during the sentencing hearing, the prosecutor began by stating that " '[w]hen . . .

251

Williams entered his plea . . . we had told the Court that we *would be* recommending . . . that he be placed on probation, that he pay arrearages and pay current child support.' " *Id.*, 249 Wis. 2d 492, ¶ 49 (third and fourth alterations in *Williams*). The prosecutor then when on to say that:

> "*After reading through the* [*PSI report*], . . . I can best describe my impression of this defendant as manipulative and unwilling to take any responsibility. I have had an occasion to speak with [the defendant's ex-wife]. And she has indicated things that she will be presenting to the Court. *But it was quite a contrast,* speaking with her and reading and learning about [the defendant]."

*Id.*, ¶ 47 (second and third brackets in *Williams*).

¶ 13. The Wisconsin Supreme Court held that the prosecutor's comments at the sentencing hearing were "less than neutral" and that "the prosecutor implied that had the State known more about [Williams], it would not have entered into the plea agreement." *Id.* Ultimately, the court concluded that the State inappropriately "cast doubt on [and] distance[d] itself from its own sentencing recommendation," and in doing so, breached the plea agreement. *Id.*, ¶¶ 50, 59.

¶ 14. This case is easily distinguishable from *Williams*. First, unlike in *Williams* where the State had agreed to recommend probation, here, the State agreed to request a PSI report and to recommend prison. The State was permitted to support its prison recommendation with facts from the PSI report, the file, and other sources describing the details of the crime, aggravating factors, and Duckett's criminal record. In *Williams*, the State, necessarily, had to tread more carefully because it had agreed to recommend probation, not prison. The State's emphasis on the negative details of the crime and aggravating factors undermined that agreement

and worked to deprive Williams of the benefit of his bargain for a probation recommendation. That is not the case here because the parties agreed that the State would recommend prison.

¶ 15. Further, in *Williams*, the State recited how its impressions of the defendant changed *after* reading the PSI report and interviewing the defendant's ex-wife. The State emphasized the new information in the PSI report, adopting the PSI report's negative characterizations of Williams as its own. The State's presentation of the new information implied that the State no longer wished to abide by the terms of the plea agreement. Here, there is nothing in the prosecutor's remarks that indicates he was backing away from the terms of the plea agreement. In this case, the prosecutor merely recited those facts set forth in the PSI report, which the court already had before it and had referred to. In his remarks, the prosecutor did not implicitly or explicitly suggest that the court should adopt the PSI report's sentencing recommendation or that the PSI report's sentencing recommendation was too lenient.

¶ 16. Duckett also attempts to persuade the court that this case is similar to *United States v. Vaval*, 404 F.3d 144 (2d Cir. 2005), a case before the Second Circuit Court of Appeals. We note as an initial matter that while the " 'due process clauses of the state and federal constitutions are essentially equivalent and are subject to identical interpretation,' " *see State v. Stenklyft*, 2005 WI 71, ¶ 63, 281 Wis. 2d 484, 697 N.W.2d 769 (citation omitted), federal cases interpreting the due process clause are only considered persuasive authority and we are not bound by those courts' decisions, *see Olivarez v. Unitrin Property & Casualty Insurance Co.*, 2006 WI

App 189, ¶ 12 n.6, 296 Wis. 2d 337, 723 N.W.2d 131. Regardless, this case is distinguishable from *Vaval* on the facts.

¶ 17.   In *Vaval*, the plea agreement prohibited the government "from seeking an upward departure or taking a position on the appropriate sentence within the applicable [U.S. Sentencing] Guidelines range" during the defendant's sentencing hearing; however, the government was permitted "to 'advise' the court of 'information relevant to sentencing.' " *Id.*, 404 F.3d at 153. In other words, the Government agreed not to recommend any sentence but only to "advise" the court of relevant information. Because of the government's "highly negative characterizations of [the defendant's] criminal history as 'appalling' and his purported contrition as 'disingenuous,' " the reviewing court found that the government did more than simply "advise," in violation of the plea agreement. *Id.* Here, Duckett's plea agreement specifically permitted the State to recommend prison. The State had not committed to taking only an "advisory" role. The State was entitled to support that prison recommendation.

¶ 18.   In short, we find the State abided by the parties' plea agreement. The plea agreement did not curtail the State's ability to advocate its position that Duckett receive prison time. Instead, the plea agreement merely prohibited the State from recommending a particular length of time. The State's recitation of the PSI report's recommendation for a specific sentence was simply that, a recitation, and the State's discussion of the particulars of Duckett's crime did not amount to an endorsement of the PSI report's recommendation. Consequently, we conclude the State did not breach the plea agreement. And because the State did not breach

254

the plea agreement, Duckett's trial counsel was not deficient for failing to object to the State's sentencing recommendation.

*By the Court.*—Judgment and order affirmed.