**COURT OF APPEALS
DECISION
DATED AND FILED**

**June 27, 2023**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal Nos.    2021AP1920-CR
2021AP1921-CR**

**STATE OF WISCONSIN**

Cir. Ct. Nos. 2019CF41
2019CF50

**IN COURT OF APPEALS
DISTRICT III**

STATE OF WISCONSIN,

  PLAINTIFF-RESPONDENT,

 V.

JEREMY V. HOOVER,

  DEFENDANT-APPELLANT.

APPEALS from judgments and an order of the circuit court for Oconto County: MICHAEL T. JUDGE, Judge. *Affirmed.*

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM.  Jeremy Hoover appeals judgments convicting him of one count of possessing child pornography and one count of second-degree sexual assault of a child.  He also appeals an order denying his postconviction motion for plea withdrawal or, alternatively, resentencing.  Hoover argues that he should be allowed to withdraw his pleas because he received constitutionally ineffective assistance when his trial counsel failed to file a motion to suppress his post-polygraph confession.  In the alternative, Hoover contends that he is entitled to resentencing because his trial counsel was ineffective by failing to object to the State's breach of the plea agreement.  The plea agreement required, among other things, that the State follow the extended supervision recommendation in the presentence investigation report (PSI).  Hoover asserts that the State materially breached that requirement at sentencing when the prosecutor stated: "It would be up to the [c]ourt to set the length of [extended supervision]" on the child pornography count.

¶2      We conclude that Hoover's trial counsel did not perform deficiently by deciding not to file a suppression motion and to instead prioritize obtaining a favorable plea agreement.  We also conclude that, under the circumstances of this case, the State's "up to the [c]ourt" comment at sentencing was not a material or substantial breach of the plea agreement and, therefore, Hoover's trial counsel did not perform deficiently by failing to object to this technical breach.  Accordingly, we affirm.

## BACKGROUND

¶3      In late March 2019, the State charged Hoover in Oconto County case No. 2019CF41 with three counts of possession of child pornography.  Two weeks later, the State filed another criminal complaint in Oconto County case

2

No. 2019CF50, charging Hoover with two counts of first-degree sexual assault of a child under thirteen years old, two counts of incest, and one count of causing a child under thirteen years old to view sexual activity. All of the charges stemmed from a federal investigation into Hoover's activity in an online chat room that shared and discussed child pornography.

¶4 According to the criminal complaints, Hoover posted multiple images of child pornography in the chat room; posted images of a clothed two-year-old child, Abigail,[1] who was related to him; and described engaging in sexual activity with Abigail. Hoover also sent private messages to an undercover federal agent, including one message stating that he is "active" with Abigail "[w]hen [he] can be." Federal authorities later identified Hoover as the responsible individual and contacted the Oconto County Sheriff's Office to take over the case.

¶5 The sheriff's office eventually questioned Hoover and confronted him regarding his online activity. Hoover admitted that he was an active member of multiple online groups that discussed children in a sexual manner. He also admitted that he posted links and images containing child pornography. However, when confronted with his messages discussing sexual activity with Abigail, Hoover denied having any sexual contact with her.

¶6 Hoover agreed to undergo a polygraph examination with an FBI agent to determine the truthfulness of his statements. During the polygraph,

---

[1] Pursuant to the policies underlying WIS. STAT. RULE 809.86(4) (2021-22), we use a pseudonym instead of the victim's name. All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

Hoover denied ever, as an adult, having sexual contact with a child or touching a child in a sexual manner. After the examination, the FBI agent told Hoover that he had failed the polygraph and that the agent was "certain Hoover was lying" about not having sexual contact with children or touching children in a sexual manner. The agent also said he believed Hoover was having sexual contact with Abigail. The agent told Hoover that if he truly loved Abigail, then "he needed to get help for himself so she would be safe from him in the future."

¶7    Hoover responded to the agent's statements and stated that he "wanted to be honest about what was going on." Hoover admitted to having sexual contact with Abigail on four separate occasions, starting when she was approximately seven months old and ending when she was about sixteen or seventeen months old. At the end of the interview, the agent recounted the details of Hoover's confession, which Hoover verified as being accurate and truthful.

¶8    In October 2019, the State and Hoover entered into a global plea agreement to resolve the two cases. Under the agreement, Hoover would plead guilty or no-contest to one amended count of second-degree sexual assault of a child and one count of possession of child pornography, the remaining counts would be dismissed and read in, the parties would jointly recommend a PSI, the State would recommend no more than fifteen years' initial confinement, and the State would follow the PSI's recommendations for the conditions and length of extended supervision.

¶9    The circuit court held a plea hearing, at which Hoover entered no-contest pleas pursuant to the plea agreement. Hoover confirmed that he understood the plea questionnaire and waiver of rights form and that he knew the court could sentence him to the maximum penalty for each of the two counts.

After accepting Hoover's pleas and finding him guilty of the two offenses, the court ordered a PSI, which ultimately recommended concurrent sentences totaling ten to eleven years' initial confinement followed by five to six years' extended supervision.

¶10 At the sentencing hearing, the State began its sentencing argument by summarizing its recommendations:

> Your Honor, the State's going to recommend 15 years initial confinement with a period of [extended supervision]. Pursuant to plea negotiations, the State's willing to follow the recommendations as far as the conditions of [extended supervision] that the Department [of Corrections] is recommending [in the PSI]. That's on the second degree sexual assault of a child.
>
> On the child pornography, the State's going to recommend that … the minimum mandatory period of initial confinement run concurrent again pursuant to plea negotiations. *It would be up to the [c]ourt to set the length of [extended supervision] on that file also.*

(Emphasis added.) Following the State's initial summary of its recommendation, the State mentioned extended supervision only one other time, noting that if Hoover is not reformed in prison, "there's also an extensive period of time that he'd be subject to supervision under the extended supervision that's available to the [c]ourt." Hoover's counsel, in turn, argued that the court should adopt the sentences recommended in the PSI. Ultimately, the court imposed consecutive sentences, totaling fifteen years' initial confinement followed by ten years' extended supervision.

¶11 Hoover later filed a postconviction motion seeking plea withdrawal or resentencing. Hoover alleged that his trial counsel had been constitutionally ineffective "for failing to file a pretrial motion to suppress [Hoover's]

5

post-polygraph statements" and "for failing to object to a material breach of the plea agreement by the prosecutor" when the prosecutor said "[i]t would be up to the [c]ourt to set the length of [extended supervision]."

¶12    The circuit court held a ***Machner***[2] hearing on Hoover's motion, at which both Hoover and his trial counsel testified. Counsel testified that he and Hoover discussed the possibility of seeking to suppress Hoover's post-polygraph statements. In those discussions, Hoover "indicated that the mechanical portions of the [polygraph] device were unhooked," that "[h]e was separated from the machine," that "[h]e was told … he had failed," and that he felt "pressure" to give a statement. Based on counsel's discussions with Hoover, counsel believed Hoover understood that the examination was done before he confessed to the other crimes. Counsel testified that he researched the relevant law, conferred with his supervising attorney, and concluded that a suppression motion was unlikely to succeed.

¶13    Hoover's trial counsel also testified that his decision to not file a suppression motion was guided, in part, by Hoover's goals in the case. Counsel believed that Hoover did not want to go through a trial "out of concern [for] his family" and the "social strain [it] would put on them." In addition, counsel was concerned he would "undermine [his] attempt to get a better [plea] offer" by filing a motion that he did not believe would succeed. With regard to the State's sentencing recommendation, counsel testified that he "did not catch the discrepancy between the written plea offer and what the State recited to the [c]ourt."

---

[2]  ***State v. Machner***, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

¶14 Hoover subsequently testified that he did not recall any discussion with his trial counsel regarding the possibility of moving to suppress Hoover's post-polygraph statements, nor did he recall counsel advising that such a motion was unlikely to succeed. Hoover claimed that if he had known he could move to suppress his statements, he would not have entered his pleas without filing the suppression motion. Hoover acknowledged that his main goals in the case were to obtain "the least amount of prison time possible," "to get any [possible] help,"[3] and to reduce the amount of "public stress" his family was under by taking a plea deal.

¶15 Hoover recalled that the FBI agent questioned him for fifteen to twenty-five minutes while Hoover was connected to the polygraph machine. At the end of the examination, the FBI agent removed the polygraph sensors and then told Hoover that "it didn't go well," that he had "failed," and that he "was a liar." According to Hoover, the agent then told him that he "ha[d] to talk to [the agent], so … [they] started a conversation at that point." Hoover said the agent told him more than once that the polygraph "didn't go well" and that he had "failed." Hoover stated that he eventually broke down emotionally and confessed to the sexual assaults because he thought he "was not going to be able to leave that room until [he] spoke to [the agent]." Hoover acknowledged, however, that he knew he had the right to remain silent and could ask for an attorney because he was previously informed of that right.

---

[3] Hoover never described the kind of "help" for which he hoped to receive. Thus, it is unclear whether Hoover was referring to legal help, treatment help, or some other form of help.

¶16   The circuit court later issued a written decision, which summarized the relevant testimony from the *Machner* hearing and noted that the court found Hoover's trial counsel's testimony to be "the most credible" as compared to Hoover's testimony.   Ultimately, the court denied Hoover's postconviction motion, concluding that Hoover's trial counsel was not ineffective for failing to file a motion to suppress Hoover's post-polygraph statements or for failing to object to the State's breach of the plea agreement.   In deciding Hoover's claim regarding the State's breach of the plea agreement, the court recognized that its sentencing decision exceeded all of the sentence recommendations.   The court therefore concluded that "the prosecutor's recommendation for extended supervision at sentencing is not a material breach that in anyway prejudiced [Hoover]."

¶17   Hoover now appeals, renewing the arguments he made to the circuit court.   Additional facts will be provided as necessary below.

## DISCUSSION

### I. Plea withdrawal based upon trial counsel's decision not to file a suppression motion

¶18   We review a circuit court's decision to deny a plea withdrawal motion for an erroneous exercise of discretion.  *State v. Schmidt*, 2021 WI 65, ¶12, 397 Wis. 2d 758, 960 N.W.2d 888.  A defendant is entitled to withdraw a guilty or no-contest plea after sentencing if the defendant "show[s] by clear and convincing evidence that a refusal to allow withdrawal of the plea would result in manifest injustice."  *State v. Dillard*, 2014 WI 123, ¶36, 358 Wis. 2d 543, 859 N.W.2d 44.  "One way to demonstrate manifest injustice is to establish that the defendant received ineffective assistance of counsel."  *Id.*, ¶84.

¶19    To prevail on an ineffective assistance of counsel claim, the defendant must establish that his or her counsel performed deficiently and that counsel's deficient performance prejudiced the defense. *State v. Breitzman*, 2017 WI 100, ¶37, 378 Wis. 2d 431, 904 N.W.2d 93. We need not consider both components of this inquiry if the defendant does not make a sufficient showing on one. *Id.*

¶20    A defendant establishes deficient performance by showing that counsel's conduct fell below "an objective standard of reasonableness." *State v. Savage*, 2020 WI 93, ¶28, 395 Wis. 2d 1, 951 N.W.2d 838 (citation omitted). We afford great deference to counsel's conduct, "presuming that it 'falls within the wide range of reasonable professional assistance.'" *Id.* (citation omitted). Counsel's strategic choices, made after a thorough investigation of the law and facts, "are virtually unchallengeable." *Strickland v. Washington*, 466 U.S. 668, 690 (1984).

¶21    To establish prejudice, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. However, "a defendant need not prove the outcome would 'more likely than not' be different in order to establish prejudice." *State v. Sholar*, 2018 WI 53, ¶44, 381 Wis. 2d 560, 912 N.W.2d 89 (citation omitted). In the context of a postconviction motion seeking plea withdrawal, "the defendant must allege that 'but for … counsel's errors, he [or she] would not have pleaded guilty and would have insisted on going to trial.'" *State v. Burton*, 2013 WI 61, ¶50, 349 Wis. 2d 1, 832 N.W.2d 611 (citation omitted).

9

¶22    Whether a defendant received infective assistance of counsel is a question of constitutional fact. *Dillard*, 358 Wis. 2d 543, ¶86. We will uphold the circuit court's findings of fact, including findings regarding the circumstances of the case and defense counsel's strategy, unless those findings are clearly erroneous. *Id.* However, we independently determine "whether those historical facts demonstrate that defense counsel's performance met the constitutional standard for ineffective assistance of counsel." *Id.*

¶23    Hoover argues that his trial counsel provided ineffective assistance by not filing a motion to suppress Hoover's post-polygraph statements. Hoover acknowledges that his trial counsel had two main reasons for not doing so: (1) counsel did not believe that a suppression motion was likely to succeed; and (2) counsel was concerned that the filing of a weak suppression motion would undermine his attempt to obtain a better plea offer. Nonetheless, Hoover contends that counsel performed deficiently because such a motion had "substantial merit" and, if successful, would have resulted in the dismissal of all charges that did not involve possession of child pornography. Hoover further suggests that the filing of the suppression motion would have only improved his plea bargaining position.

¶24    Hoover's arguments fall well short of demonstrating deficient performance. Counsel testified at the *Machner* hearing—and the circuit court credited his testimony—that he researched the relevant law concerning post-polygraph statements; that he considered the available facts, including Hoover's recollection of the post-polygraph interview; that he conferred with his supervising attorney; and that he determined a suppression motion was not likely to succeed. Counsel further explained that he believed, based on his discussions with Hoover, that Hoover understood the polygraph examination was over before

he confessed to additional crimes and that the factual context was insufficient to establish that Hoover's statements were involuntary.

¶25    Counsel's understanding of the applicable law and its application to the relevant facts was not unreasonable.  Post-polygraph statements are admissible into evidence if they are made in an interview that is discrete from the polygraph examination and are voluntary under ordinary constitutional considerations.  ***State v. Vice***, 2021 WI 63, ¶24, 397 Wis. 2d 682, 961 N.W.2d 1.  "Whether a statement is considered part of … a totally discrete event is largely dependent upon whether the [polygraph examination] is over at the time the statement is given and the defendant knows the [examination] is over."  ***State v. Davis***, 2008 WI 71, ¶23, 310 Wis. 2d 583, 751 N.W.2d 332.  Statements will be deemed voluntary if neither coercion nor other improper police conduct was used to secure the statements.  ***Id.***, ¶36.

¶26    With regard to whether Hoover's statements were part of a discrete event, Hoover's trial counsel testified that Hoover "indicated that the mechanical portions of the [polygraph] device were unhooked," that "[h]e was separated from the machine," and that "[h]e was told … he had failed."  Further, counsel also testified that he believed Hoover knew the examination was complete, which is a significant consideration of the discreteness inquiry.  *See **id.***, ¶23.  Hoover argues that his statements were not part of a discrete event because he was told that he had failed the examination "immediately after he was disconnected from the polygraph machine" and that he made his post-polygraph statements in the same seat as the one used for the examination.  Although Hoover has identified some facts that might be favorable to him in a discreteness analysis, *see **Vice***, 397 Wis. 2d 682, ¶25 (discussing a number of discreteness considerations), he has not

shown that his trial counsel's analysis was below an objective standard of reasonableness, especially given counsel's belief that Hoover knew the examination was over before confessing.

¶27    As to whether Hoover's post-polygraph statements were voluntary, Hoover's trial counsel recalled that Hoover felt "pressure" to make statements and that the FBI agent said Hoover was lying and had failed the polygraph examination.  Counsel could not recall how many times Hoover was told he was lying during the post-polygraph interview, but counsel said that he ultimately determined the overall facts were insufficient to show that Hoover's statements were involuntary.  Hoover argues that he would have been able to show that his statements were involuntary because the FBI agent "repeatedly" told him that he had failed the polygraph examination and said that he was required to talk to the agent.

¶28    Even assuming that Hoover was repeatedly told that he failed the polygraph examination (the circuit court never made such a finding), Hoover has again failed to show that his counsel's analysis was unreasonable.  Indeed, the facts certainly do not amount to egregious police coercion.  *See id.*, ¶¶33-34 (discussing examples of potential coercive police conduct, such as questioning an incapacitated and sedated suspect or questioning a suspect who has been deprived of sleep and food, subjected to physical violence, or threatened).  Hoover was advised of his right to remain silent and his right to an attorney upon being brought in for questioning; all of the questioning, including the polygraph interview, appears to have occurred over several hours during the day; and Hoover could not identify any external "pressure" other than the FBI agent merely saying that Hoover "ha[d] to talk to him."

12

¶29    In addition to his belief that a suppression motion would not succeed, Hoover's trial counsel also believed that such a motion might undermine his ability to obtain the best plea offer. Hoover criticizes this concern, arguing that "the greatest concessions are made when both parties are prepared to fight" and questioning how a suppression motion could possibly undermine plea negotiations. In making these arguments, however, Hoover ignores his own actions that contributed to counsel's strategy. *See Strickland*, 466 U.S. at 691 ("The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions."). In particular, counsel testified that he focused on plea negotiations because Hoover wanted to avoid trial, which Hoover himself confirmed by testifying that he wanted a plea deal to reduce the stress on his family. Counsel also testified that he and Hoover discussed the possibility of filing a suppression motion, but neither counsel nor Hoover testified that Hoover insisted on filing the motion. Again, the circuit court found counsel's testimony more credible. Thus, the facts strongly suggest that Hoover agreed with counsel's strategy at the time.

¶30    Finally, Hoover faults his trial counsel for not filing a suppression motion because his post-polygraph statements were the "sole basis" for the charges in the second case. He contends that if a suppression motion had been granted, "the charges in the second case would have to be dismissed." This argument is a nonstarter. Hoover's trial counsel testified that Hoover's text messages describing sexual assault could have provided a sufficient basis—"albeit a thinner one"—for the State to continue its prosecution. Despite this testimony, Hoover fails to develop any argument that the State would have been unable to prosecute him based solely on his online statements.

¶31     In sum, Hoover has not shown that his trial counsel's decision not to file a suppression motion was deficient, falling below an objective standard of reasonableness. Counsel made strategic decisions based upon his informed understanding of the law and facts and based upon Hoover's goals in the case. Accordingly, the circuit court did not erroneously deny Hoover's plea withdrawal motion by concluding that his trial counsel had not provided ineffective assistance.

## II. Resentencing based upon trial counsel's failure to object to the State's breach of the plea agreement

¶32     "A defendant has a constitutional right to the enforcement of a negotiated plea agreement." *State v. Campbell*, 2011 WI App 18, ¶7, 331 Wis. 2d 91, 794 N.W.2d 276 (2010). If a defendant fails to contemporaneously object to a sentencing argument that allegedly breaches the plea agreement—like Hoover did here—the defendant forfeits direct review of the alleged breach and can obtain relief only through an ineffective assistance of counsel claim. *See State v. Duckett*, 2010 WI App 44, ¶6, 324 Wis. 2d 244, 781 N.W.2d 522. In evaluating such a claim, the threshold inquiry is whether the State materially and substantially breached the plea agreement. *Id.* "If a defendant fails to prove that a material and substantial breach of the plea agreement occurred, counsel's failure to object is not ineffective assistance." *Campbell*, 331 Wis. 2d 91, ¶8.

¶33     "Not all conduct that deviates from the precise terms of a plea agreement constitutes a breach that warrants a remedy." *State v. Deilke*, 2004 WI 104, ¶13, 274 Wis. 2d 595, 682 N.W.2d 945. A mere technical breach is not enough to obtain relief; rather, the breach must be material and substantial. *Duckett*, 324 Wis. 2d 244, ¶8. Thus, a defendant must establish, by clear and

convincing evidence, that a breach occurred and that the breach was material and substantial. *Deilke*, 274 Wis. 2d 595, ¶13.

¶34    Hoover argues that his trial counsel was ineffective for not objecting to the State's sentencing recommendation. In doing so, Hoover concedes that "the prosecutor did recommend … the period of [extended supervision] recommended by the [PSI] on the second[-]degree sexual assault charge." He nevertheless contends that the prosecutor materially and substantially breached the plea agreement by stating that the extended supervision on the child pornography count would be "up to the [c]ourt," instead of expressly suggesting that the court follow the PSI's recommendation.

¶35    The State does not dispute that it breached the plea agreement by not expressly endorsing the PSI's recommended period of extended supervision on the child pornography count. Indeed, our supreme court has previously held that "[a] prosecutor who does not present the negotiated sentencing recommendation to the circuit court breaches the plea agreement." *State v. Bokenyi*, 2014 WI 61, ¶41, 355 Wis. 2d 28, 848 N.W.2d 759 (alteration in original; citation omitted). Nonetheless, the State argues that its breach was neither material nor substantial.

¶36    "A material and substantial breach is a violation of the terms of the agreement that defeats the benefit for which the accused bargained." *State v. Williams*, 2002 WI 1, ¶38, 249 Wis. 2d 492, 637 N.W.2d 733. Although a circuit court is not bound by the plea agreement, *Bokenyi*, 355 Wis. 2d 28, ¶39, "it is irrelevant whether the … court was influenced by the State's alleged breach or chose to ignore the State's recommendation" when determining whether a breach

is material and substantial,[4] ***State v. Bowers***, 2005 WI App 72, ¶8, 280 Wis. 2d 534, 696 N.W.2d 255. "Whether the State's conduct 'constitutes a material and substantial breach of a plea agreement is a question of law that we review de novo.'" ***Bokenyi***, 355 Wis. 2d 28, ¶38 (citation omitted).

¶37 Here, the benefits bargained for in Hoover's plea agreement were the dismissal of six felony charges, the reduction of a first-degree sexual assault charge to a second-degree sexual assault charge, a recommendation of no more than fifteen years' initial confinement, and a recommendation that "follow[s the] PSI['s suggested] … conditions … and length of [extended supervision]." Except for the State's extended supervision comment on the child pornography count, the parties agree that the State fully complied with the plea agreement.

¶38 Although the State did not follow the PSI's extended supervision recommendation on the child pornography count, the State did not advocate for more extended supervision than the amount recommended in the PSI. Nor did the State express any criticism of the PSI or suggest that the circuit court ignore the PSI's recommendations. Rather, the State merely noted that the extended supervision "would be up to the [c]ourt" on the child pornography count, which, in

---

[4] Hoover argues that the circuit court erred by considering whether the State's breach influenced the court's sentencing decision. We agree that the court's decision could be interpreted as suggesting that the breach was not material because the court made "its own" sentencing decision. The court's reliance on that fact would therefore be contrary to well-established case law, which provides that such a fact is irrelevant to determine whether a breach is material and substantial. *See* ***State v. Bowers***, 2005 WI App 72, ¶8, 280 Wis. 2d 534, 696 N.W.2d 255. However, the court's decision could also be interpreted as focusing on the prejudice prong of Hoover's ineffective assistance of counsel claim. Regardless, we need not determine the precise confines of the court's decision because our standard of review is de novo, and we may affirm on different grounds than those relied on by the circuit court. *See* ***State v. Earl***, 2009 WI App 99, ¶18 n.8, 320 Wis. 2d 639, 770 N.W.2d 755.

a practical sense, was correct because the court is not bound by the plea agreement. *See id.*, ¶39.

¶39    Significantly, this is not a case in which the State attempted an "[e]nd run[]" around the plea agreement or attempted to undercut its promised sentence recommendation. *See **Williams***, 249 Wis. 2d 492, ¶42 ("The State may not accomplish by indirect means what it promised not to do directly, and it may not covertly convey to the [circuit] court that a more severe sentence is warranted than that recommended." (citations omitted)).  Indeed, nothing in the State's sentencing argument can be construed as recommending more extended supervision than the PSI's recommendation.  To the contrary, the State recommended *concurrent* sentences, which implied that the State's recommendation for extended supervision on the second-degree sexual assault count—the more serious offense—would be sufficient.  *See* WIS. STAT. §§ 948.02(2) (stating that second-degree sexual assault of a child is a Class C felony), 948.12(3)(a) (stating that possession of child pornography is a Class D felony).

¶40    Hoover concedes in his reply brief that the State did not explicitly recommend a greater period of extended supervision than the amount recommended in the PSI.  Nonetheless, he argues that the State's comment made it "much more likely" that the circuit court would exceed the PSI's recommendation.

¶41    We disagree that the State's conduct meaningfully increased the likelihood that the circuit court would exceed the PSI's recommendation for extended supervision.  As we have already discussed, the State did not express doubt in the PSI's recommendations, nor did it implicitly recommend more extended supervision than the amount recommended in the PSI.  Although there

might have been some persuasive value in the State parroting the PSI's recommendation, we cannot say that the State's failure to do so in this case "*defeat[ed]* the benefit for which [Hoover] bargained." *See Williams*, 249 Wis. 2d 492, ¶38 (emphasis added). Thus, the State's breach was not material or substantial.

¶42 Having failed to establish a material and substantial breach of the plea agreement, Hoover has also failed to establish that his trial counsel was ineffective for failing to object to the State's sentence recommendation. *See Campbell*, 331 Wis. 2d 91, ¶8. We conclude that counsel did not perform deficiently under the circumstances by failing to notice and object to the State's technical breach of the plea agreement. Accordingly, the circuit court properly denied Hoover's request for resentencing.

*By the Court.*—Judgments and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.