COURT OF APPEALS
DECISION
DATED AND FILED

March 26, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP284-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2020CF152

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

V.

STEVEN WAYNE SHAW,

    DEFENDANT-APPELLANT.

---

APPEAL from a judgment and an order of the circuit court for Washington County: TODD K. MARTENS and MICHAEL S. KENITZ, Judges. *Affirmed*.

Before Gundrum, P.J., Neubauer and Grogan, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM. Steven Wayne Shaw appeals a judgment of conviction for conspiracy to possess cocaine with the intent to deliver and an order denying his postconviction motion seeking plea withdrawal. He argues the circuit court erred by concluding that Shaw's plea was knowing, intelligent, and voluntary despite a defective plea colloquy that failed to inform Shaw that the court was not bound by the parties' joint sentencing recommendation. Shaw also alleges defects at his sentencing hearing, specifically that the prosecutor breached the joint sentencing recommendation and that the court was biased and improperly sentenced him based upon his race. We reject Shaw's arguments and affirm.

## BACKGROUND

¶2    Following an extensive investigation into a drug distribution network, Shaw was charged in a multi-count complaint with, among other things, conspiracy to possess more than forty grams of cocaine with the intent to deliver. He reached a plea agreement with the State, under which he would plead guilty to that count, the remaining counts would be dismissed and read in, the charges in another case would be dismissed and read in, and another uncharged offense would be read in at sentencing. The parties agreed to jointly recommend a concurrent sentence of eight and one-half years' initial confinement and were free to argue the length of extended supervision.

¶3    Shaw reviewed and signed a Plea Questionnaire/Waiver of Rights form with his attorney. The circuit court conducted a plea colloquy with Shaw, after which it accepted his guilty plea.[1]  Though Shaw was informed of the

_____

[1] The Honorable Todd K. Martens presided over the plea and sentencing hearings.

2

maximum penalties for the offense to which he was pleading, he was not informed during the colloquy that the court was not bound by the plea agreement or joint recommendation at sentencing.

¶4    At sentencing, after hearing argument from the State and defense, the circuit court ultimately imposed a sentence consisting of eleven years each of initial confinement and extended supervision. The court commented upon Shaw's voluminous criminal history, his "garbage" claims that he was an unwitting accomplice to the drug distribution organization rather than its ringleader, his poor character, the harm to the community by his actions, and the need to protect the public and send a deterrent message.

¶5    Shaw sought postconviction plea withdrawal or, in the alternative, resentencing. As relevant here, Shaw argued that he was entitled to plea withdrawal because at the time of his plea he was not told, and did not know, that the circuit court was not bound by the joint sentencing recommendation. Alternatively, Shaw argued he was entitled to resentencing because the prosecutor had implicitly breached the plea agreement by highlighting negative information about Shaw. Shaw also asserted he was entitled to resentencing because the court displayed racial and personal bias toward Shaw.

¶6    The circuit court conducted a *Machner* hearing,[2] after which it denied Shaw's motion.[3] Acknowledging that the plea colloquy was defective insofar as the court failed to advise Shaw that it was not bound by the plea

---

[2] *See* *State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

[3] The Honorable Michael S. Kenitz entered the order denying Shaw's postconviction motion.

agreement, the court nonetheless found that Shaw "expected Judge Martens to follow the joint recommendation but that he knew it was not guaranteed." Accordingly, the court concluded the State had met its burden of demonstrating that Shaw's plea was knowing, intelligent, and voluntary despite the defect in the plea colloquy.

¶7   Next, because there had been no contemporaneous objection to the prosecutor's comments at sentencing, the circuit court approached the alleged breach of the plea agreement through the lens of ineffective assistance of counsel. The court concluded that Shaw's defense counsel had not performed deficiently because the prosecutor's argument did not constitute a material and substantial breach of the plea agreement regarding the joint initial confinement recommendation.

¶8   The circuit court also concluded Shaw was not entitled to resentencing based on the court's sentencing statements. The court regarded all of the judge's comments as relating to valid sentencing factors. Though the judge's comments were "harsh," the sentencing transcript, considered in its totality, did not demonstrate that the judge harbored inappropriate bias of either a racial or personal nature toward Shaw. Shaw appeals.

## DISCUSSION

¶9   Shaw's appeal raises a plethora of issues, including his request for plea withdrawal based on a defect in the plea colloquy, alleged ineffective assistance of counsel stemming from Shaw's attorney's failure to object to the prosecutor's sentencing comments, and alleged structural error relating to racial and personal bias on the part of the sentencing judge. We address the issues in that order and agree with the circuit court that none of them warrant relief.

4

I.      *The circuit court properly concluded that the State met its burden of demonstrating that Shaw's plea was valid despite the defective plea colloquy.*

¶10     When a defendant seeks post-sentencing plea withdrawal, he or she must establish by clear and convincing evidence that plea withdrawal is necessary to avoid a manifest injustice. *State v. Brown*, 2006 WI 100, ¶18, 293 Wis. 2d 594, 716 N.W.2d 906. A guilty plea entered on anything less than a knowing, intelligent, and voluntary basis constitutes a manifest injustice and violates due process. *Id.*, ¶¶18-19.

¶11     Here, there is no dispute that Shaw's plea colloquy was defective, causing genuine concern about the knowing, intelligent, and voluntary nature of his plea. Contrary to well-settled law, the circuit court did not advise Shaw that it was not bound by the term of the plea agreement, including the parties' joint sentencing recommendation. *See id.*, ¶35.

¶12     As a result, the burden shifted to the State during postconviction proceedings to demonstrate by clear and convincing evidence that Shaw's plea was knowing, intelligent, and voluntary despite the defective plea colloquy. *Id.*, ¶40. The circuit court found that Shaw knew at the time he entered his plea that the court was not bound by the joint sentencing recommendation of eight and one-half years' initial confinement. Shaw challenges that factual finding as clearly erroneous.

¶13     Overturning a finding of fact is a high hurdle for an appellant. A factual finding is not clearly erroneous merely because another factfinder could have reached a different conclusion or drawn different inferences from the record. *Bray v. Gateway Ins. Co.*, 2010 WI App 22, ¶24, 323 Wis. 2d 421, 779 N.W.2d 695 (2009). Rather, to overturn a finding of fact, the appellant must demonstrate

that the evidence in support of the contrary finding constitutes the great weight and clear preponderance of the evidence. ***Noll v. Dimiceli's, Inc.***, 115 Wis. 2d 641, 643-44, 340 N.W.2d 575 (Ct. App. 1983).

¶14     Shaw fails to satisfy that standard here. In his reply brief, he "agrees that [his defense attorney] read [to him] that portion of the [Plea] Questionnaire advising that 'the judge is not bound by any plea agreement or recommendation.'"[4] Shaw's concession on this point of fact is consistent with his defense counsel's testimony and is supportive of the circuit court's finding that Shaw knew the court was not bound by the joint recommendation.

¶15     Though the fact that Shaw's defense counsel explicitly told him the circuit court was not bound by the joint recommendation is the strongest evidence of such knowledge, other portions of the appellate record also support the court's finding. During the plea colloquy, Shaw was told that if he entered a guilty plea to the charge he faced up to the maximum penalty of forty years' incarceration. Shaw acknowledged the maximum penalty and did not ask for clarification about why the court could order a forty-year sentence if the joint recommendation was for eight and one-half years' initial confinement.

¶16     Also, by Shaw's own account, he and his defense attorney had several discussions about whether the sentencing judge was "going to go along with it" (i.e., the joint recommendation). Indeed, Shaw's defense attorney testified

---

[4] Curiously, later on the same page, Shaw states that "there is nothing in the record to support a finding that [his defense counsel] ever told Shaw, anytime, that Judge Martens was not bound by the terms of the joint IC recommendation." This assertion appears to be wholly inconsistent with Shaw's concession that his attorney read him the plea questionnaire's "not bound" language. Regardless, as we explain, the circuit court's factual finding about Shaw's knowledge is not clearly erroneous.

their sentencing strategy was to get the circuit court "to go along with the joint recommendation." As the court recognized with denying Shaw's motion, there would have been no need for conversations about the likelihood of the court complying with or deviating from the joint recommendation if Shaw believed the court could impose no other sentence.

¶17 This is not to say there was no contrary evidence. The circuit court acknowledged the testimony of Shaw's defense attorney that it was reasonable for Shaw to have believed, upon entering his plea, that he would be getting eight and one-half years' initial confinement. However, the court found this belief was more along the lines of an expectation that the court would sentence him in accordance with the joint recommendation, rather than a belief that the court was *required* to sentence him accordingly. The court's finding that Shaw knew the sentencing court was not bound by the joint recommendation despite the plea colloquy defect is not against the great weight and clear preponderance of the evidence.

II. *The prosecutor's sentencing argument was an explicit rebuttal to Shaw's attempts to minimize his culpability to the presentence investigation report author and did not constitute a material and substantial breach of the plea agreement's joint sentencing recommendation.*

¶18 Next, Shaw argues the prosecutor at his sentencing breached the joint recommendation "by uttering a multitude of statements, some racially tinged and some merely irrelevant, that were far more than hints that the State was advocating a longer initial confinement than agreed to." Because Shaw's defense attorney did not object to the State's comments at the sentencing hearing, Shaw can raise this issue only through the lens of ineffective assistance of counsel. *See State v. Duckett*, 2010 WI App 44, ¶6, 324 Wis. 2d 244, 781 N.W.2d 522.

¶19    ***Duckett*** provides that analytical framework we follow here. First, we must determine whether the State breached the plea agreement, which is a question of law that we review de novo. *See **id.*** If there was a material and substantial breach of the plea agreement, we then consider whether Shaw's attorney was constitutionally ineffective for failing to object. *See **id.***

¶20    We start with the alleged breach. "[N]ot all conduct that deviates from the precise terms of a plea agreement constitutes a breach entitling the defendant to relief." ***State v. Campbell***, 2011 WI App 18, ¶7, 331 Wis. 2d 91, 794 N.W.2d 276 (2010). The defendant must demonstrate a "material and substantial" breach. ***Id.*** A material and substantial breach is one that violates the terms of the plea agreement and deprives the defendant of a material and substantial benefit for which he or she bargained. ***Id.***

¶21    As an initial matter, we note that the prosecutor did make the agreed-upon sentencing recommendation—twice. Both at the beginning of the hearing and at the inception of her sentencing remarks, the prosecutor recited that the joint recommendation was for eight and one-half years of initial confinement.

¶22    Shaw does not highlight specific problematic statements by the prosecutor. Though the argument section of Shaw's brief-in-chief is non-specific,[5]

---

[5] Shaw does attempt to make a more refined argument in his reply brief, but his attempt to cherry-pick comments he regards as irrelevant is unpersuasive. Shaw relies on his defense attorney's testimony at the ***Machner*** hearing that certain of the prosecutor's comments did not appear to support the joint recommendation. But here we consider a slightly different question, whether the comments constituted a material and substantial breach of the plea agreement. That is a question of law on which we need not defer to the testimony of a witness. More importantly, we take a wholistic view of the sentencing argument when resolving that issue. *See **State v. Williams***, 2002 WI 1, ¶46, 249 Wis. 2d 492, 637 N.W.2d 733 ("We must examine the entire sentencing proceeding to evaluate the prosecutor's remarks.").

more than a page of the facts section is devoted to the prosecutor's sentencing comments. Many of the prosecutor's comments referenced there were proper sentencing remarks and do not even arguably fit Shaw's "inappropriate" and "racially tinged" characterizations. As just one example, Shaw highlights the prosecutor's argument that Shaw "essentially made Main Street cocaine central in West Bend." That was, in fact, exactly what Shaw was accused of doing—using his clothing store on Main Street in West Bend as a distribution hub for cocaine. Shaw stipulated to the facts set forth in the criminal complaint as a factual basis for his plea.

¶23 Rather, Shaw argues that the totality of the prosecutor's comments suggested that Shaw should receive much more than the jointly recommended eight and one-half years' initial confinement. He appears particularly aggrieved by the prosecutor's reference to the sentence recommended by the presentence investigation report (PSI), which the prosecutor mentioned immediately before she articulated the State's recommendation of eight and one-half years' initial confinement and twelve years' extended supervision. The PSI author recommended nine to ten years of initial confinement and seven to eight years of extended supervision.

¶24 We agree that the singular reference to the PSI author's recommendation appears gratuitous, but it does not follow that the prosecutor's remarks, considered in their totality, deprived Shaw of the benefit of the plea agreement. The prosecutor had good reason for referring to the PSI, in particular highlighting Shaw's statements to the PSI author. Shaw had portrayed himself to the PSI author (and, later, in his allocution) as a somewhat reluctant middleman, with his co-defendants using his "connections" in Milwaukee to distribute drugs.

He argued that his involvement was animated by his "extreme use of crack cocaine" and his desire to afford rent at his clothing store.

¶25 The prosecutor pushed back against that narrative. She noted the extensive evidence that Shaw was at the top of the distribution chain, including monitored jail calls that law enforcement understood as coded messages about where to store and deliver drugs. According to a transaction ledger obtained from a co-defendant, Shaw had profited over $28,000 from drug sales in just one month. The prosecutor argued it was reasonable to believe Shaw was making more than $300,000 per year dealing, with "[n]o taxes, no arrears, all for the Defendant."

¶26 The prosecutor's reference to "arrears" is particularly notable, both in this context and in the context of Shaw's challenge to the circuit court's exercise of sentencing discretion. The prosecutor argued that Shaw had failed to take responsibility throughout his life, including in supporting his "five children with five different women." The prosecutor highlighted that Shaw owed more than $200,000 in past child support, which he refused to pay even with an estimated annual income of $300,000.

¶27 The prosecutor also spent considerable time describing Shaw's offense history (more than two dozen convictions) and the details of the investigation that led to Shaw's present conviction in an explicit effort to rebut Shaw's claimed motivations for his crime. Toward the end of her comments, the prosecutor summarized:

> While the Defendant attempts to control and manipulate the narrative of the PSI as just a poor drug addict, who never received treatment, it is clear this Defendant does have a problem with drugs; the Defendant is a drug dealer. And the problem for this Defendant is he got caught. The narrative in the PSI is nothing more than an attempt to

> provoke sympathy with the Court as to the true motivations
> for his criminal enterprise.

She concluded with a reference to the 1991 film "New Jack City," arguing that Shaw viewed the "glorified drug dealing" depicted in that movie as a "career path" and that it was his employment for the last "30 plus years."

¶28 We agree with the circuit court that the prosecutor's comments did not rise to the level of a material and substantial breach. The State did not attempt to make an "end run" around the plea agreement by giving the impression that more confinement time was warranted than the joint recommendation. *See State v. Williams*, 2002 WI 1, ¶42, 249 Wis. 2d 492, 637 N.W.2d 733. Rather, "[t]he State was permitted to support its prison recommendation with facts from the PSI report, the file, and other sources describing the details of the crime, aggravating factors, and [the defendant's] criminal record." *Duckett*, 324 Wis. 2d 244, ¶14. In the face of Shaw's attempts to minimize his culpability, the State no doubt viewed reference to those materials as necessary to justify the lengthy eight-and-one-half-year joint recommendation as to initial confinement.

¶29 This situation is the inverse of that in the *Williams* case. There, our supreme court determined the State stepped over the line when it distanced itself from the agreed-to probation recommendation after learning additional negative information about the defendant from the PSI and other sources. *Williams*, 249 Wis. 2d 492, ¶50. But here, the State was confronted by Shaw's minimization of his culpability to the PSI author. The State needed to justify a joint recommendation for a significant amount of initial confinement and its assertion that a lengthy period of extended supervision was appropriate.

¶30    To the well-settled principles in *Williams* and *Duckett*, we add here that when a defendant minimizes involvement in a crime of conviction to the PSI author or otherwise posits matters at odds with the relevant facts, the State has more latitude to support a jointly recommended prison sentence by highlighting information that may not be favorable to the defendant. The prosecutor could reasonably counter Shaw's characterization of his crime to the PSI author, not as a disservice to, but in support of, the joint sentencing recommendation.

### III.    The sentencing court's comments do not indicate that Shaw was denied a fair and impartial sentencing proceeding.

¶31    Shifting to the circuit court's sentencing remarks, Shaw argues he was denied due process and is entitled to resentencing. His resentencing argument appears to have two components: that he was sentenced based on an improper factor—his race[6]—and that he was denied a hearing before a fair and impartial tribunal. Neither argument carries the day.

¶32    Before turning to the legal standards governing these arguments, we briefly take stock of the circuit court's sentencing remarks. The court began by noting that Shaw was facing a possible sentence of twenty-five years' initial confinement and fifteen years' extended supervision, and had received the benefit of a plea bargain that dismissed "100 years of additional charges." The court then directly challenged Shaw's narrative during his allocation:

> You are convicted, because you ran a cocaine trafficking ring both before and during your jail stay in the Washington County Jail. You are a career criminal. You are a drug dealer. You say there's a misunderstanding. No, there's no misunderstanding here, you're just a drug dealer,

---

[6] Shaw is Black.

12

and have been for a long time. You ran a substantial drug … ring in our community. You brought large quantities of poison. You brought large quantities of drugs which corrode our community. And I just think it's disgusting when you present yourself like you're a pillar of the community. You are delusional. You say that the West Bend community opened up to you and welcomed you. And how did you repay them? By bringing poison, by bringing drugs, starting a drug ring on Main Street in downtown of West Bend. Well, let's make you man of the year. Maybe we can get a parade going for you around Memorial Day. You are delusional. You are a parasite… You are a drain on … society. Because of you, people are dying, they are losing their kids, they themselves are going to prison. You say you're hard on yourself. You're way too easy on yourself. And you're not just a drug dealer, you're a career criminal. Your whole adult life, you have been nothing but a criminal. And not just a drug dealer. You're a violent criminal. You engage in a pattern of intimidation. You're a thug. This is thuggish behavior. There's no other way to put it. So don't for a minute think I am buying any of your garbage about being a pillar of this community. And you hear garbage about, "I am going to change when I get out." You're not going to change. You're 53 years old. You've committed enough crimes to satisfy ten lifetimes. I strain to find anything positive to say about you. I mean, you present as an intelligent person. You sure are talkative. You had a lot to say, but I think you primarily present as a delusional person. You talk about yourself in a way that suggests that you think you are just the victim here. And if you think for one second that I buy this garbage that you're slinging about oh, your minions, your lackeys, your runners are really taking advantage of you. That's a bunch of garbage. You were running this thing.

The foregoing provides the tenor of the court's comments, which also touched upon Shaw's character, his lengthy criminal history, his "morality" in fathering multiple children with multiple women outside of his long-term relationship, his failure to support those children, and his past failures to adapt his conduct to the requirements of the law.

¶33 Shaw first argues the circuit court improperly sentenced him based on his race. Every defendant has a constitutional due process right not be

13

sentenced on the basis of their race. *State v. Harris*, 2010 WI 79, ¶33, 326 Wis. 2d 685, 786 N.W.2d 409. A defendant bears the burden of showing that it is highly probable or reasonably certain that the court actually relied on race when imposing its sentence. *Id.*, ¶35.

¶34 Shaw has not made that showing here. The State correctly observes that, except as described below, the circuit court's sentencing comments were inarguably racially neutral and focused on relevant sentencing considerations. And Shaw does not clearly articulate which of the court's comments demonstrate reliance on an improper racial factor, instead wholistically describing the sentencing remarks as "infused with improper language, demeaning character references, and racially tinged references."

¶35 Scathing language and character assessments, of course, do not themselves constitute, or even necessarily imply, a racial component to a sentence. On that point, Shaw's brief is rife with suggestions of comments the circuit court never actually made. For example, the prosecutor used the words "flash and show," not the court. Elsewhere, Shaw suggests the court focused on the "biracial babies [Shaw] doesn't support," but nowhere in the sentencing remarks is there any reference to the race of Shaw or his children. Given Shaw's failure to focus in on any allegedly offending remarks and his embellishment of the transcript, we deem his argument undeveloped. *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) (holding that we need not address arguments that consist only of undeveloped themes and general statements).

¶36 Nonetheless, the State concedes that the circuit court's use of the words "thug" and "thuggish" merit closer scrutiny. The State "acknowledges that the word[s have] associations with Black hip-hop music and gang culture and can

fairly be said to carry racial connotations in some contexts." *Harris* provides a roadmap for addressing allegations regarding the use of racial stereotypes at sentencing.

¶37    *Harris* evaluated the context of the specific comments to assess whether they were part of a discussion of proper factors and the explanation for the sentencing decision. *See Harris*, 326 Wis. 2d 685, ¶¶50, 53. We agree with the State that here, the circuit court's use of "thug" and similar verbiage did not carry a racial connotation. The State asserts—and Shaw does not rebut—that the word quite literally refers to a person who uses violence as a means to obtain a desired result. That was precisely the context for the court's use of that word, which was preceded by references to Shaw as a "violent criminal" who "engag[ed] in a pattern of intimidation."[7]

¶38    Next, Harris argues that "[m]any of the [circuit court's comments] that demonstrate bias were racially neutral but still were so extreme as to 'display clear inability to render fair judgment'" under *Liteky v. United States*, 510 U.S. 540 (1994). Under *Liteky*, judicial bias encompasses a "disposition or opinion that is somehow *wrongful or inappropriate*." *Id.* at 550. For purposes of the recusal statute at issue there, the opinion recognized that when a judge's knowledge and opinion are obtained in the course of the proceeding, the judge is not necessarily recusable for bias or prejudice merely because the judge is "exceedingly ill

---

[7] The circuit court used the phrase "thuggish behavior" a second time in a similar fashion: "You have engaged in a nonstop lifetime of criminal behavior, both violent, drug-related, and has [sic] a pattern of intimidation that is very disturbing. This kind of thuggish behavior, you're getting punished for all of this."

disposed towards the defendant, who has been shown to be a thoroughly reprehensible person." *Id.* at 550-51.

¶39    Wisconsin law takes a similar view.  We indulge a rebuttable presumption that a judge has acted fairly, impartially, and without bias.  *State v. Goodson*, 2009 WI App 107, ¶8, 320 Wis. 2d 166, 771 N.W.2d 385.  A litigant may rebut that presumption by demonstrating that the judge was actually or objectively biased.  *Id.*

¶40    Shaw appears to argue the sentencing judge was objectively biased. Objective bias constitutes a due process violation "whenever a reasonable person—taking into consideration human psychological tendencies and weaknesses—concludes that the average judge could not be trusted to hold the balance nice, clear and true under all the circumstances."  *Id.*, ¶9 (quotation omitted).  Whether a party has demonstrated objective bias is a question of law. *Id.*, ¶7.

¶41    Nowhere in his briefing does Shaw articulate or attempt to apply the standard for objective bias.  Essentially, he invites this court to review the sentencing transcript ourselves, as if doing so will manifestly demonstrate "obviously biased and prejudiced language."  Our review shows something different: a judge that was deeply troubled by Shaw's minimization of his extensive criminal behavior.  The circuit court did not demonstrate obvious objective bias by pointing out—in admittedly harsh language, at times—that Shaw's explanations and statements flew in the face of the evidence and failed to take into account Shaw's lengthy criminal history.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.